Skip to Main Content Logout My Account Search Menu New Civil Probate Family Search Refine Search Back Location : Bernalillo County Images Help

# REGISTER OF ACTIONS

## CASE NO. D-202-CV-2016-06414

**Francesca Tuoni v. Metropolitan Property and Casualty Insurance Company** § § § § § §

Case Type: **Contract/Debt & Money Due**
Date Filed: **10/13/2016**
Location: **Bernalillo County**
Judicial Officer: **Butkus, Carl J.**

### PARTY INFORMATION

| | | Attorneys |
|---|---|---|
| **Defendant** | **Metropolitan Property and Casualty Insurance Company** ***Doing Business As*** **MetLife Auto & Home** | |
| **Plaintiff** | **Tuoni, Francesca** | **JOHN TIWALD** *Retained* |

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| Date | Event | Detail |
|---|---|---|
| 10/13/2016 | **Cause Of Actions** | Bad Faith |
| | Action Type | Action |
| 10/13/2016 | **Cause Of Actions** | Breach of Contract |
| | Action Type | Action |
| 10/13/2016 | **Cause Of Actions** | Declaratory Relief |
| | Action Type | Action |
| 10/13/2016 | **OPN: COMPLAINT** | |
| 10/13/2016 | **ARB: CERT NOT SUBJECT** | |
| 10/17/2016 | **AMENDED COMPLAINT** | |
| 10/20/2016 | **Summons** | |
| | Metropolitan Property and Casualty Insurance Company | Unserved |

### FINANCIAL INFORMATION

**Plaintiff** Tuoni, Francesca

| | | |
|---|---|---|
| Total Financial Assessment | | 132.00 |
| Total Payments and Credits | | 132.00 |
| **Balance Due as of 11/23/2016** | | **0.00** |

| Date | Transaction | Receipt | Party | Amount |
|---|---|---|---|---|
| 10/14/2016 | Transaction Assessment | | | 132.00 |
| 10/14/2016 | File & Serve Payment | Receipt # ALBD-2016-28365 | Tuoni, Francesca | (132.00) |

EXHIBIT A

FILED IN MY OFFICE
DISTRICT COURT CLERK
10/13/2016 11:11:24 PM
James A. Noel
Latoya Grayes

State of New Mexico
County of Bernalillo
Second Judicial District Court

D-202-CV-2016-06414

**Francesca Tuoni**
Plaintiff

v.

**No.** ______________________

**Metropolitan Property and Casualty Insurance Company, dba MetLife Auto & Home**
Defendant

## Complaint for Declaratory Judgment, Breach of Contract, and Bad Faith

**This Claim** concerns Plaintiff Francesca Tuoni's underinsured motorist coverage pursuant to her automobile liability insurance policy with Defendant MetLife.

### General Allegations

1. Plaintiff is a resident of Bernalillo County, State of New Mexico.

2. Defendant is an insurer organized and existing under the laws of a state other than New Mexico, but is authorized to conduct business in New Mexico.

3. The insurance contract at issue herein was made between the parties, and delivered to Plaintiff, in Albuquerque, New Mexico.

4. At all times pertinent hereto, Plaintiff was the driver of her car insured by Defendant Metropolitan Property and Casualty Insurance Company dba MetLife Auto & Home (referred to herein as "MetLife"). The insurance policy was issued to Francesca Tuoni, policy no. 0542527760, and in effect on the date of the collision in this case which was September 13, 2005. Attached to this Complaint as **Exhibit 1** is a copy of the declarations page describing the coverage and policy limits applicable to this claim, and the pages describing the Underinsured Motorists Coverage.

**EXHIBIT A**

5. On September 13, 2005, while driving her insured automobile, Ms. Tuoni was broadsided on the driver's side by a vehicle which ran a red light at a high rate of speed at the intersection of Lomas and Girard in Albuquerque. The driver of the other vehicle was Melody Ripley.

6. The collision was caused by the negligence and carelessness of Melody Ripley.

7. As a direct and proximate result of the collision, Francesca Tuoni has suffered severe personal injuries, impairment, disability, and pain and suffering; she was made to incur medical treatment and bills. She has suffered permanent injury and disability and loss of enjoyment of life.

8. After the collision and as a result of the negligence of Melody Ripley and the injuries suffered by Francesca Tuoni, Ms. Tuoni obtained a policy limits settlement of $25,000 with Ripley's automobile liability insurance carrier. Defendant MetLife gave consent to that policy limits settlement.

9. The policy limits settlement with Ripley's insurance carrier was insufficient to cover the damages incurred by Plaintiff Tuoni, so she made a demand for settlement with Defendant MetLife pursuant to the under-insured motorist provisions of Tuoni's insurance policy, Ex. 1.

10. Plaintiff has performed all conditions precedent to her right to receive insurance proceeds under the MetLife insurance policy for her losses and injuries caused by the negligence and carelessness of Melody Ripley.

11. Despite Plaintiff's settlement demand made to Defendant MetLife, the defendant has failed and refused to offer any amount for settlement of Plaintiff's damages suffered as a result of the collision. Defendant has further stated that the demand is "outside the applicable Statute of Limitations."

**Declaratory Judgment**

12. Plaintiff incorporates here all other allegations of this Complaint.

**EXHIBIT A**

13. This action for declaratory judgment is made pursuant to NMSA § 44-6-1 *et seq.*, the Declaratory Judgment Act of New Mexico, for the purpose of determining an actual controversy between the parties which is ripe for resolution by this Court.

14. Plaintiff contends that there is underinsured motorist bodily injury coverage in the amount with $100,000 limits available to her under the terms of the insurance policy, subject to reduction by the amount she received from the at-fault driver's insurance carrier.

15. After MetLife consented to the third party settlement of $25,000 on February 26, 2010, the parties engaged in a multi-year correspondence and exchange of phone calls concerning Ms. Tuoni's medical treatment, injuries, medical expenses, and MetLife's evaluation of the underinsured motorist claim. Specifically the following letters were exchanged. This is not an all-inclusive listing of the letters, because Plaintiff does not possess copies of all correspondence and some is redundant:

**Exhibit 2**: MetLife to Plaintiff's counsel Robert Avila dated April 6, 2010,

**Ex. 3:** MetLife to Avila dated April 30, 2010, stating: "[W]e believe that the insured has been fairly compensated for her loss, thereby, we will be unable to make any offers at this time."

**Ex. 4:** Avila to MetLife 5/19/2010 asking for a copy of the insurance policy.

**Ex. 5:** MetLife to Avila 5/28/2010 discussing the claim and again stating "[W]e believe that the insured has been fairly compensated for her loss, thereby, we will be unable to make any offers at this time."

**Ex. 6:** Avila to MetLife 7/9/2010 providing further documents, discussing the claim, asking for referral to counsel for arbitration or litigation, and offering an Independent Medical Examination.

**Ex. 7:** MetLife to Avila 7/28/2010.

**Ex: 8:** Avila to MetLife 8/25/10 asking for followup.

**Ex. 9:** MetLife to Avila 10/13/2010 denying request for arbitration and/or IME.

**Ex. 10:** MetLife to Avila 11/17/2010 asking: "Please contact me at your earliest convenience so that we can move toward resolving your client's claim."

**Ex. 11:** MetLife to Plaintiff's new counsel John Tiwald 1/9/2012 asking for updating medical treatment information.

**Ex. 12:** MetLife to Tiwald 5/11/2012 seeking to "discuss your client's claim in more detail."

**Ex. 13:** MetLife to Tiwald 8/24/2012.

**Ex. 14:** MetLife to Tiwald 1/25/2013 asking for "updated status for consideration of Francesca Tuoni's continued treatment."

**Ex. 15:** MetLife to Tiwald 12/13/2013 seeking additional medical and wage records "for further consideration."

**Ex. 16:** Tiwald to MetLife 7/18/2016 submitting formal settlement package. (Only the first page of this 36-page letter is attached here. The letter and package of records can be produced to defense counsel and the Court as necessary.)

**Ex. 17:** MetLife to Tiwald 9/29/2016. Denial of claim for statute of limitations beginning by letter of 4/30/2010.

16. The statute of limitations for making the underinsured motorist claim is settled for New Mexico in the case of *Brooks v. State Farm Insurance Company*, 2007-NMCA-033, 141 N.M. 322 (Ct.App. 2007). This case addresses the question: "When does the six-year limitations period for contract actions begin to accrue on a claim raised under an uninsured motorist policy?" *Brooks*, ¶ 2. The Court of Appeals states:

> [T]he limitations period for seeking UIM coverage does not begin to run until there is a justiciable claim based on a "failure to do what which is required under the terms of the policy." Until that time, the parties are performing according to the bargained-for obligations under the policy, and there is no cause to seek judicial relief." *Id.* ¶ 15. (internal citations omitted).

17. Based upon continued communications of the parties attached hereto as exhibits, the ***earliest*** that MetLife failed to act under the terms of the policy was in its letter of 10/13/2010 (Ex. 9) which denies the request for arbitration or an IME. Good argument can be made that the first failure of MetLife to act under the policy actually occurred at a later time in the chronology of correspondence.

18. Plaintiff asks the Court to review the insurance contract, the correspondence between the parties, the facts and circumstances, and the applicable law, and issue its order determining and awarding the amount of damages incurred by the Plaintiff, declaring the parties' respective rights and obligations, and directing the parties' behavior accordingly, all as permitted by statute.

**Breach of Contract**

19. Plaintiff incorporates all other allegations of this Complaint.

20. The insurance policy (Ex. 1) states that Defendant MetLife "will pay damages for bodily injury sustained by you . . . caused by an accident arising out of the . . . use of an underinsured motor vehicle, which you . . . are legally entitled to collect from the owner or driver of an underinsured motor vehicle."

21. Defendant has failed and refused to pay those damages under the terms of the insurance policy. The refusal is unreasonable.

22. Defendant has breached its contractual obligation to pay the damages incurred by Plaintiff.

23. Plaintiff is entitled to recover his attorney fees and costs in pursuing this action, pursuant to NMSA § 39-2-1.

**Bad Faith**

24. Plaintiff incorporates all other allegations of this Complaint.

25. There is implied in every insurance policy a duty on the part of the insurance company to deal fairly with the policy holder.

26. Fair dealing means to act honestly and in good faith in the performance of the contract.

27. The insurance company must give equal consideration to its own interests and the interests of the policy holder.

28. An insurance company and its employees act in bad faith when they refuse to pay a claim of the policyholder for reasons which are frivolous or unfounded.

29. In deciding whether to pay a claim, the insurance company and its employees must act reasonably under the circumstances.

30. The acts of the Defendant in choosing to deny Plaintiff's claim based on its letter of 4/30/2010 (Ex. 3) was unreasonable and unfair in light of the continuous communications between the parties.

31. The acts of the Defendant in denying the claim in these circumstances was a breach of its duty to give equal consideration to the interests of the policy holder and to its own interests.

32. The acts of the Defendant constitute an unreasonable failure to pay a first party coverage claim, entitling Plaintiff to an award of reasonable attorney fees and costs under NMSA § 39-2-1.

33. The actions of Defendant were willful, reckless, malicious, oppressive, and in bad faith or fraudulent, entitling Plaintiff to recover punitive damages in an amount to be determined.

**Unfair Insurance Claim Practices**

34. Plaintiff incorporates all other allegations of this Complaint.

35. Defendant's denial of the claim constitutes an unfair and deceptive practice and is prohibited by § 59A-16-20, NMSA 1978, as follows:

> 59A-16-20.E: not attempting in good faith to effectuate prompt, fair and equibable settlements of an insured's claims in which liability has become reasonably clear;

36. Defendant's denial of the claim is a bad faith breach of its duty to act honestly and in good faith. Travelers Insurance Co. v. Montoya, 90 N.M. 556, 566 P.2d 105 (Ct.App.1977); UJI 13-1702 NMRA; and other New Mexico case law.

**Wherefore** Plaintiff asks the court for judgment against Defendant as follows:

A. For this Court's order determining the rights and liabilities of the parties as to insurance policy proceeds due and payable under the policy of insurance, and directing the parties to act in accordance therewith;

B. For an award in favor of Plaintiff and against Defendant in an amount sufficient to compensate Plaintiff for all damages, injuries, losses, punitive damages, attorney fees, costs, and interest recoverable under the law, including prejudgment interest;

C. For Plaintiff's attorney fees and costs pursuant to § 39-2-1, NMSA 1978.

D. For such other and additional relief as may be deemed proper under the law.

Respectfully submitted,

**John Tiwald, P.C.**
**Attorney for Plaintiff**

By *<u>/s/ John Tiwald — Electronically filed</u>*

John Tiwald, Attorney at Law
6121 Indian School Road NE, Suite 210
Albuquerque, New Mexico 87110-3179
(505) 883-4133
john@tiwaldlaw.com

Policy Number: 0542527760
Policy Effective Date: 06-01-2005
Policy Expiration Date: 12-01-2005
At: 12:01 A.M.

Renewal Effective Date: 06-01-2005

Named Insured:

FRANCESCA TUONI
327 TULANE PL NE
ALBUQUERQUE NM 87106

You have selected our Payroll Deduction Plan. Your premium includes the Payroll Deduction Discount.

## Insured Vehicle(s)

| Veh | Year | Make | Model | Body Type | Vehicle ID Number | Sym | Territory |
|---|---|---|---|---|---|---|---|
| 1 | 1989 | VOLVO | 240 | 4DR | YV1AX8842KH337072 | 10 | 07 |

| Coverage Description | Applicable Limits | Semi-Annual Premiums 1989 VOLVO |
|---|---|---|
| **Liability** | | |
| Bodily Injury | $ 100,000 Per Person/ | |
| | $ 300,000 Per Occurrence | 65 |
| Property Damage | $ 50,000 Per Occurrence | 52 |
| Medical Expense | $ 5,000 Per Person | 11 |
| **Physical Damage** | 1989 VOLVO | |
| Actual Cash Value(ACV) or Limit | ACV | |
| Collision less deductible | $ 100 | 61 |
| Comprehensive less deductible | $ 50 | 28 |
| Towing and Labor Limit | $ 50 | Incl |
| **Optional Coverages** | | |
| Substitute Transportation | $25 Day/ $750 Occurrence | 16 |
| | **Vehicle Totals:** | 233 |
| | **Total For All Vehicles:** | 233 |
| **Uninsured/Underinsured Motorists** | | |
| Bodily Injury | $ 100,000 Per Person/ | |
| | $ 300,000 Per Accident | 37 |
| Property Damage | $ 10,000 Per Accident | 3 |
| | **Total Semi-Annual Premium:** | 273 |

16.

**Deductible Savings Benefit (DSB) $ 200**

Deductible Savings reduces Collision or Comprehensive deductibles, excluding towing and glass claims, effective 06-01-2005 for claims occurring after this date. Your next anniversary date is 06-01-2006. See Important Notice for detail

**Forms and Endorsements**
MPL 6010-000 NM400A NM700 V550 V934

MetLife® Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its Affiliates, Warwick, RI

MPL 1380-000

Printed in U.S.A.

EXHIBIT A

**uninsured motor vehicle,** which **you** or a **relative** are legally entitled to collect from the owner or driver of an **uninsured motor vehicle;** or

2. any other person, caused by an accident while **occupying** a **covered automobile,** who is legally entitled to collect from the owner or driver of an **uninsured motor vehicle.**

**We** will also pay damages to any person for damages that person is entitled to recover because of **bodily injury** sustained by anyone described in 1. or 2. above.

**UNDERINSURED MOTORISTS COVERAGE**

This coverage is provided only if a premium is shown in the Declarations.

**We** will pay damages for **bodily injury** sustained by:

1. **you** or a **relative,** caused by an accident arising out of the ownership, maintenance, or use of an **underinsured motor vehicle,** which **you** or a **relative** are legally entitled to collect from the owner or driver of an **underinsured motor vehicle;** or
2. any other person, caused by an accident while **occupying** a **covered automobile,** who is legally entitled to collect from the owner or driver of an **underinsured motor vehicle.**

**We** will also pay damages to any person for damages that person is entitled to recover because of **bodily injury** sustained by anyone described in 1. or 2. above.

**COVERAGE EXCLUSIONS**

**We** do not cover:

A. any person **occupying** or struck by a **motor vehicle** owned by **you** or a **relative,** other than a **covered automobile.**

B. any person who settles a **bodily injury** claim, with any liable party, without **our** written consent.

C. any claim which would benefit any insurer or self-insurer under any workers compensation, disability benefits, or similar law.

D. any claim for which benefits are provided under the Personal Injury Protection or Medical Expense coverage of this policy.

E. any person, other than **you,** or a **relative,** while **occupying:**

1. a **covered automobile** while it is being used to carry persons or property for a fee.

   EXCEPTION: This exclusion does not apply to shared expense car pools.

2. a vehicle while being used without the permission of the owner.

F. **bodily injury** or **property damage** awards designated as punitive, exemplary, or statutory multiple damages.

G. a **relative** who owns, leases or has available for their regular use, a **motor vehicle** not described in the Declarations.

**SETTLEMENT**

Whether any person is legally entitled to collect damages under this section, and the amount to which such person is entitled, will be determined by agreement between that person and **us.** Upon written consent of both parties, any disagreement will be settled by arbitration.

When arbitration applies, it will take place under the rules of the American Arbitration Association, unless other means are required by law or are agreed to by the injured party and **us.**

If a person seeking coverage files a suit against the owner or driver of the **uninsured** or **underinsured motor vehicle,** copies of suit papers must be forwarded to **us** and **we** have the right to defend on the issues of the legal liability of, and the damages owed by, such owner or driver. However, **we** are not bound by any judgment against any person or organization obtained without **our** written consent.

**LIMIT OF LIABILITY**

The limit of liability shown in the Declarations for "each person" is the most **we** will pay for all damages, including damages for care, loss of consortium, emotional distress, loss of services or death, arising out of **bodily injury** sustained by any one person as the result of any one accident. Subject to this limit for "each person", the limit shown in the Declarations for "each accident" for **bodily injury** liability, is the most **we** will pay for all damages, including damages for care, loss of consortium, emotional distress, loss of services or death, arising out of **bodily injury** sustained by two or more persons resulting from any one accident. This is the most **we** will pay regardless of the number of:

1. covered persons;

2. claims made;

3. vehicles or premiums shown in the Declarations; or

4. vehicles involved in the accident.

**REDUCTIONS**

The lesser of the limits of this insurance or the amount payable under this coverage will be reduced by any amount:

1. paid by or on behalf of any liable parties.

2. paid or payable under any workers compensation, disability benefits or similar laws.

3. paid or payable under the **AUTOMOBILE LIABILITY** section of this policy.

**OTHER INSURANCE**

If there is other similar insurance, **we** will pay only **our** fair share. The total amount of recovery under all policies will be limited to the highest of the applicable limits of liability of this insurance and such other insurance.

**Our** fair share is the proportion that **our** limit bears to the total of all applicable limits. However, if **you** do not own the **motor vehicle, our** insurance will be excess over other similar uninsured or underinsured insurance available but only in the amount by which the limit of liability of this policy exceeds the limits of liability of the other available insurance. If there is other excess or contingent insurance, **we** will pay **our** fair share.

MetLife Auto & Home®
Dallas Field Claim Office
Mail Processing Center
P.O. Box 410350
Charlotte, NC 28241
(800) 854-6011

MetLife

April 6, 2010

**Via Fax – 505-247-4284**
Robert Avila
P.O. Box 1966
Albuquerque, NM 87103

Our Customer: Francesca Tuoni
Our Claim Number: DAB41867 DU
Date of Loss: September 13, 2005
Your Client: Francesca Russo
Your File Number:

Dear Robert Avila:

As per our recent conversation, enclosed is an unofficial copy of the Dec Page for the insured showing UM/UIM coverages. We also note that we have received via fax from your office today, a copy of the adverse carrier's settlement agreement and settlement check. You have also informed that you are in the process of obtaining one additional record and bill to add to our evaluation of which we hope to receive prior to the completion of the evaluation .

Also as discussed, we are in the process of completing our evaluation and will respond accordingly within three weeks and/or by April 19, 2010.

If you have any questions in the meantime, please give me a call.

Sincerely,

Annjece Washington
Metropolitan Direct Property and Casualty Insurance Company
Senior Claim Adjuster
(800) 854-6011 Ext. 5563
Fax: (866) 947-1917

New Mexico state law requires us to notify you of the following: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilt of a crime and may be subject to civil fines and criminal penalties.

EXHIBIT
2

EXHIBIT A

MetLife Auto & Home
Dallas Field Claim Office
Mail Processing Center
P.O. Box 410350
Charlotte, NC 28241
(800) 854-6011

APR 30 2010

MetLife®

April 30, 2010

**Via Fax – 505-247-4284**
Robert Avila
P. O. Box 1966
Albuquerque, NM 87103

| | |
|---|---|
| Our Customer: | Francesca Tuoni |
| Our Claim Number: | DAB41867 DU |
| Date of Loss: | September 13, 2005 |
| Your Client: | Francesca Tuoni |

Dear Bob:

As per our recent conversation regarding settlement for the above Underinsured Motorist bodily injury claim (herein) UMBI, we believe that the insured has been fairly compensated for her loss, thereby, we will be unable to make any offers at this time.

If you would still like to discuss this further to go over the medical records, I would be happy to do so.

Please contact me once you have discussed this with your client. Thank you.

We look forward to hearing from you soon.

Sincerely,

Anniece Washington
Metropolitan Direct Property and Casualty Insurance Company
Senior Claim Adjuster
(800) 854-6011 Ext. 5563
Fax: (866) 947-1917

New Mexico state law requires us to notify you of the following: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilt of a crime and may be subject to civil fines and criminal penalties.

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its Affiliates, Warwick, RI

MPL OFFERAT

EXHIBIT 3

Printed in U.S.A 0698

EXHIBIT A

Mailing: *Robert J. Avila, P.A.* Office:

P.O. Box 1966
Albuquerque, NM 87103
Fax (505) 247-4284

Attorney & Counselor At Law
E.Mail: rjavila@qwestoffice.net

115 8th Street, SW
Albuquerque, NM 87102
Phone: (505) 247-4321

May 19, 2010

Anniece Washington
MetLife
P.O. Box 410350
Charlotte, NC 28241-0350

**RE: My Client/Your Insured: Francesca Tuoni**
**Your Claim No.: DAB418670**
**Date of Loss: September 13, 2005**

Dear Anniece:

I had hoped to speak with you last week as we had planned, but you have not returned my phone call. Pursuant to our conversation it would appear that you may have overlooked all of the references regarding Ms. Tuoni's head injury and/or confused the other bodily injuries with the issues related to her head injury.

I would ask that you review these highlighted portions of her medical records in order to link the initial injury with her subsequent care. You stated to me in our telephone conversation that she did not complain of a head injury until over one year after the collission. As you will see with the enclosed records, Ms. Tuoni was complaining immediately after the collision of pressure in the back of her head, as well as dizziness, memory loss and inability to hold certain words. As she continued to receive medical care many of these symptoms did resolve. The doctors who were treating her, however, felt that she may have suffered a traumatic brain injury and therefore recommended the neurological testing.

I want to clearly establish that this office never prescribed nor recommended any particular care, but did, however, discuss with Ms. Tuoni the various types of imaging and testing that are available with a potential closed head injury. This is not only appropriate, but it is essential for counsel to explore the realm of medical care in the context of her concerns about her injury.

We have requested from MetLife on numerous occasions a copy of her policy of insurance. This has yet to arrive. In the event you do not change your position regarding Ms. Tuoni receiving full compensation for her claim, there must be a determination on how the claim will be resolved. There should be policy provisions that addresses dispute resolution. This production, however,



does not cure the fact that your company has not provided the policy of insurance after numerous requests for review.

We are also very concerned you are not only discounting her head injury, but also the chronic and permanent nature of the cervical spine injury. By denying her coverage from her underinsured motorist you are not attempting in good faith to effectuate a prompt, fair and equitable settlement of her claim in which liability has become reasonably clear. You are also compelling your insured to institute litigation to recover amounts due under the policy by offering her nothing.

Your letter of April 30, 2010 contains no statement whatsoever regarding the basis of your determination that you *"believe that the insured has been fairly compensated for her loss, thereby, we will be unable to make any offer at this time."* Your insured hereby demands that should you maintain this position, after having reviewed the highlighted information herein, that you provide a reasonable explanation of the basis upon which you rely upon to deny her claim. This should be specific and directly relate to medical records and your determination as to the value of her claim. Your insured is entitled to a specific, concise statement as to all reasons for denial of her claim pursuant to New Mexico Law.

Given the permanent nature of her cervical spine injuries as well as the closed head injury that Ms. Tuoni suffered, she needs your help more than ever to resolve her claim. People necessarily look to their insurance company for relief as they believe that their company will act in good faith at all times.

Please contact me upon receipt. We expect an answer within ten (10) days and immediate production of her policy of insurance.

Sincerely,

ROBERT J. AVILA
Attorney at Law

Enclosure: as stated

RJA/rp

cc: Francesca Tuoni

MetLife Auto & Home®
Dallas Field Claim Office
Mail Processing Center
P.O. Box 410350
Charlotte, NC 28241
(800) 854-6011

JUN 0 2 2010

MetLife

May 28, 2010

**Fax Via (505) 247-4284**
Robert J. Avila, P.A.
P. O. Box 1966
Albuquerque, NM 87103

Our Customer: Francesca Tuoni
Our Claim Number: DAB41867 DU
Date of Loss: September 13, 2005
Your Client: Francesca Tuoni

Dear Mr. Avila:

This letter is to acknowledge your letter dated May 19, 2010. In your letter you assert that we may have overlooked all of the references regarding Ms. Tuoni's head injury and/or have confused the other bodily injuries with issues related to her head injury. You have also confirmed via voicemail, that you have received a certified copy of the insured's policy.

We have completed our review of the medical records provided by your office. The medical records reveal that Ms. Tuoni treated on the date of loss for pain in the right side of her neck and shoulder. She advised at that time she had no loss of consciousness. She was diagnosed with a cervical strain and recommended heat and ice. Later that month, Ms. Tuoni sought treatment for complaints of right anterior chest pain with chest x-ray which was normal. She was referred for physical therapy, but sought massage therapy instead. According to the medical records, theses initial complaints of neck and chest resolved.

The insured sought treatment on the scene by EMS, we have no records of this encounter to review for any complaints of head injury. Our findings on exams by PMR (Garza) and 3 neurologists was mildly decreased cervical range of motion and some tenderness. No neurological symptoms, nor changes in motor sensory. Due to these findings it is difficult to casually relate a closed head injury or concussion as a result of the above accident. We also find that no diagnosis was made of possible post-traumatic brain injury until 1 year later. All testing for possible head injury was normal, (Brain MRI, EEG) as well as the neuropsychological evaluation was inconsistent with brain injury. The psychologist noted no malingering, but that the claimant was pre-occupied with her health.

The insured sought treatment for 4 years as a result of the above accident and after careful review and evaluation of her claim, we find it difficult to casually relate the significant amount of treatment to the above accident.

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its Affiliates, Warwick, RI

MPL SETACK

EXHIBIT 5

Printed in U.S.A 0698

EXHIBIT A

We also have requested to obtain missing records to review the specialist reports. This request included obtaining records from the following:

EMS for date of loss
Chiropractor Dr. Russo after 8/30/2006 to present, he also ordered current Physical Therapy
Mr. Fahey, MT regarding Rolfing Testing, was this ever done.
John Sloan MD, he ordered the lumbar MRI and several of the consults.

Thank you for your time in this matter, however, based on the above evaluation, we believe that the insured has been fairly compensated for her loss, thereby, will be unable to make any offers at this time.

If you would like to discuss further or have any additional information you would like to add, please feel free to contact me at the number listed below.

Sincerely,

Annlece Washington
Metropolitan Direct Property and Casualty Insurance Company
Senior Claim Adjuster
(800) 854-6011 Ext. 5563
Fax: (866) 947-1917

New Mexico state law requires us to notify you of the following: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilt of a crime and may be subject to civil fines and criminal penalties.

Mailing:
P.O. Box 1966
Albuquerque, NM 87103
Fax 505.247.4284

*Robert J. Avila, P.A.*
Attorney & Counselor At Law
E.Mail: rjavila@qwestoffice.net

Office:
115 8th Street, SW
Albuquerque, NM 87102
Phone: 505.247.4321

July 9, 2010

Anniece Washington
MetLife
P.O. Box 410350
Charlotte, NC 28241-0350

**RE: My Client/Your Insured: Francesca Tuoni**
**Your Claim No.: DAB418670**
**Date of Loss: September 13, 2005**

Dear Ms. Washington:

I appreciate your allowing me the opportunity to provide you with additional requested medical records. We enclose the following:

1. Albuquerque Fire Department Incident Report, 09.13.05
2. Francesca Russo, D.C., B.C.A.O. records from November 2006 to 4.20.10
3. Brian W. Fahey, faxed 06.08.10
4. Dr. Sloan report 01.21.07

The Albuquerque Fire Department (AFD) report that we obtained, based on your request, establishes the head and body trauma suffered by Ms. Tuoni was caused by the high impact collision. AFD arrived soon after the collision and assessed Ms. Tuoni for trauma. She described her injuries to the neck and as suffering from an immediate onset of headache and overall body trauma. The EMS detailed her trauma in the report. A person does not have to lose consciousness to have suffered a closed head injury. (Please access the Center for Disease Control website, traumatic brain injury, concussion syndrome for extensive authority substantiating this statement). The records establish head trauma symptoms at the time of the collision.

I have attached for you the records that we received from Dr. Russo from August 30, 2006 to present, as requested. The November 8, 2006 report states Ms. Tuoni's condition is unchanged and that Dr. Russo would henceforth provide support on a palliative/supportive basis because her Atlas had held for four months. Ms. Tuoni returned in October of 2006 and again in October 2008 when her Atlas would cause her difficulty. She returned for treatments in July 2009 through April 2010 with her symptoms unchanged and painful. You will note that when she carried

**EXHIBIT A**

groceries, it aggravated her condition. This loss of household services must be considered by you in your evaluation of her chronic condition.

We inquired as to Dr. Fahey's [sic] reports per your request. We understand that Francesca Tuoni visited Mr. Fahey in 2006. Mr. Fahey is not a licensed practitioner; therefore, Ms. Tuoni did not receive any care from him and sought out another Physical Therapist, Terry Kern, P.T. However, we attach a copy of the correspondence from Mr. Fahey's office to the effect that the records she brought in were returned to Ms. Tuoni and that he did not generate any records.

We also are attaching the records that we have received from Dr. Sloan in regards to the MRI. Dr. Sloan is one of several physicians at Manzano Medical Group. We directed this request to Dr. Sloan, as opposed to the group and were able obtain the attached report. Dr. Sloan met with Ms. Tuoni in January 2006. She was suffering from chronic pain, pressure, numbness and tingling in various parts of her body. After examination she was diagnosed with chronic pain. Chronic conditions are deemed permanent and, indeed, she continues to suffer to this date. It is incredulous that you determine she is not entitled to compensation for a lifetime of pain and suffering related to her bodily injuries and all the consequences therefrom that affect every aspect of her life because you believe she didn't suffer trauma to the head.

I respectfully disagree with the analysis you provided in your short form letter. Ms. Tuoni repeatedly complained of numerous symptoms which are consistent with a closed head injury/concussion.

On May 19, 2010, we provided you with extensive medical records wherein we highlighted all of the symptoms consistent with a head injury one year post collision. For example, the November 14, 2005 records where she indicated that she couldn't remember phone numbers and suffered from anxiety. Occipital and suboccipital tenderness was noted. The "pressure" she feels is in the back of the head and she had buzzing episodes. The accident report on the day of the collision she complained of being light headed, memory loss and loss of balance, all consistent with the mechanics of her injury. The first year records also reflect dizziness, nausea and blurred vision. The May 2006 records of Dr. Russo notes a possible brain trauma. The brain is very soft tissue and is encased in the skull and when her head was thrown so far forward as to leave a lipstick stain on her blouse, we know the flexion and extension was severe, with the brain colliding against the walls of the skull. We provided this to your office after you indicated there was no symptomology related to her closed head injury until one year post incident. You repeat this unfounded position in your most recent correspondence.

You have required the insured to submit, now threefold, medical records for her claim. We believe that your explanation is insufficient in regards to your statutory duty to inform your insured of the reason for denial of her claim. Although you take issue with her head injury, you have completely ignored the other chronic neck and back injuries, loss of household services and loss of enjoyment of life in your evaluation.

After your review of these documents, should your office decide to maintain your position that Ms. Tuoni is not entitled to further recovery, we request that you advise who your choice of counsel here in New Mexico is so that we may discuss the issues of whether this matter will proceed to Litigation or Arbitration. You may also wish to consider an IME. This office is always amendable to alternative dispute resolution and you may wish to discuss this with MetLife.

Your prompt review of these materials would be greatly appreciated.

Cordially,

ROBERT J. AVILA
Attorney at Law

cc: Francesca Tuoni *(w/o enclosures)*

Encls.: *as stated*

**EXHIBIT A**

MetLife Auto & Home®
Dallas Field Claim Office
Mail Processing Center
P.O. Box 410350
Charlotte, NC 28241
(800) 854-6011

AUG 02 2010

July 28, 2010

**Via Fax – 505-247-4284**
Robert Avila
P. O. Box 1966
Albuquerque, NM 87103

Our Customer: Francesca Tuoni
Our Claim Number: DAB41867 DU
Date of Loss: September 13, 2005
Your Client: Francesca Tuoni

Dear Avila:

Thank you for providing us with the additional requested information. As per our conversation of 07/28/2010 and after careful review of the additional medical records and as per our letter dated May 28, 2010, our evaluation remains unchanged. The Albuquerque Fire Department Ambulance Report indicated that the insured was ambulatory at the scene, denied loss of consciousness, was alert and oriented and complained of minor pain to the right lateral neck and headache.

Again based on our continued evaluation of the prior and/or recent medicals provided, we continue to find it difficult to causally relate the head injury and the significant amount of treatment to the above accident. Therefore, we believe that the insured has been fairly compensated for her loss, and will be unable to make any offers at this time.

You have requested that we advise you of our choice of counsel in New Mexico so that we may discuss the issue of whether this matter will proceed to Litigation and/or Arbitration. You have also requested that we consider an IME. We will respond to your request respectfully.

Looking forward to speaking with you soon regarding the above matter.

Sincerely,

Anniece Washington
Metropolitan Direct Property and Casualty Insurance Company
Senior Claim Adjuster
(800) 854-6011 Ext. 5563
Fax: (866) 947-1917

New Mexico state law requires us to notify you of the following: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilt of a crime and may be subject to civil fines and criminal penalties.

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its Affiliates, Warwick, RI

EXHIBIT A
EXHIBIT
7



*Robert J. Avila P.A.*

ATTORNEY AND COUNSELOR AT LAW
Ph 505.247.4321 | Fx 505.247.4284
Office: 115 8th Street, SW | Mailing: P.O. Box 1966 | Albuquerque, NM 87103
Email: rjavila@qwestoffice.net

August 25, 2010

Anniece Washington
MetLife
P.O. Box 410350
Charlotte, NC 28241-0350

**RE: My Client/Your Insured: Francesca Tuoni**
**Your Claim No.: DAB418670**
**Date of Loss: September 13, 2005**

Dear Anniece:

We have not heard from you regarding choice of local counsel nor have I received a phone call. If the file is in transit, please advise.

I appreciate your prompt response.

Cordially,

ROBERT J. AVILA
Attorney at Law

cc: Francesca Tuoni

RJA/rp

**EXHIBIT A**

MetLife Auto & Home®
Dallas Field Claim Office
Mail Processing Center
P.O. Box 410350
Charlotte, NC 28241
(800) 854-6011

**MetLife**

October 13, 2010

Via Fax – (505) 247-4284
Robert J. Avila P. A. Attorney and Counselor at Law
115 8th Street , SW
P.O. Box 1966
Albuquerque, NM 87103

| | |
|---|---|
| Our Customer: | Francesca Tuoni |
| Our Claim Number: | DAB41867 DU |
| Date of Loss: | September 13, 2005 |
| Your Client: | Francesca Tuoni |

Dear Mr. Avila:

In response to your recent letter and based on our continued evaluation of the above claim, we continue to find it difficult to causally relate the head injury and the significant amount of treatment to the above accident. Therefore, we believe that the insured has been fairly compensated for her loss and will be unable to respond to your request for Arbitration and/or an IME.

Looking forward to speaking with you soon regarding the above matter.

Sincerely,

Anniece Washington
Metropolitan Direct Property and Casualty Insurance Company
Senior Claim Adjuster
(800) 854-6011 Ext. 5563
Fax: (866) 947-1917
Email: awashington@metlife.com

New Mexico state law requires us to notify you of the following: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilt of a crime and may be subject to civil fines and criminal penalties.

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its Affiliates, Warwick, RI

MPL OFFERAT

Printed in U S A 0698

EXHIBIT A

MetLife Auto & Home®
Dallas Field Claim Office
Mail Processing Center
P.O. Box 410350
Charlotte, NC 28241
(800) 854-6011

NOV 2

November 17, 2010

Robert Avila
P. O. Box 1966
Albuquerque, NM 87103

Our Customer: Francesca Tuoni
Claim Number: DAB41867 DU
Date of Loss: September 13, 2005
Your Client: Francesca Tuoni

Dear Robert Avila:

Please contact me at your earliest convenience so that we can move toward resolving your client's claim.

I look forward to hearing from you soon.

Thank you.

Sincerely,

Anniece Washington
Metropolitan Direct Property and Casualty Insurance Com[illegible]
Senior Claim Adjuster
(800) 854-6011 Ext. 5563
Fax: (866) 947-1917

New Mexico state law requires us to notify you of the following: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilt of a crime and may be subject to civil fines and criminal penalties.

MetLife Auto & Home is a brand of Metropolitan Property and Casualty I[illegible]

MPL ATYCALLBK

Printed in U.S.A. 0698

EXHIBIT 10

EXHIBIT A

MetLife Auto & Home®
Dallas Field Claim Office
Mail Processing Center
P.O. Box 410350
Charlotte, NC 28241
(800) 854-6011

MetLife®

January 9, 2012

RECEIVED
JAN 12 2012

John Tiwald Law Firm
6121 Indian School Road NE, Suite 210
Albuquerque, NM 87110-3179

Our Customer: Francesca Tuoni
Claim Number: DAB41867 DU
Date of Loss: September 13, 2005
Your Client: Francesca Tuoni

Dear John :

Thank you for your letter acknowledging that you represent Francesca Russo for the accident that occurred on September 13, 2005. Please help us in obtaining this pertinent information:

- Names of attending physicians
- Current status of injury
- Exact diagnosis, prognosis, and estimated length of treatment
- Known wage loss to date, anticipated future wage loss, and anticipated date of return to work.
- All office notes as well as initial, intermediate, and final reports for treating physicians.
- All related medical bills **(each bill should contain CPT and ICD-9 codes as well as a tax identification number for each provider).**

Please be sure to forward medical documentation as it becomes available, this will help us maintain proper reserves for this claim. If you have any questions about this request or your client's claims in general, please call me. Thank you.

Sincerely,

Anniece Washington
Metropolitan Direct Property and Casualty Insurance Company
Senior Claim Adjuster
(800) 854-6011 Ext. 5563
Fax: (866) 947-1917

New Mexico state law requires us to notify you of the following: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilt of a crime and may be subject to civil fines and criminal penalties.

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its Affiliates, Warwick, RI

MPL ATYREPINFO

EXHIBIT
11

Printed in U.S.A 0698

EXHIBIT A



MetLife Auto & Home®
Dallas Field Claim Office
Mail Processing Center
P.O. Box 410350
Charlotte, NC 28241
(800) 854-6011

MetLife®

May 11, 2012

John Tiwald Law Firm
6121 Indian School Road NE
Suite 210
Albuquerque, NM 87110-3179

Our Customer: Francesca Tuoni
Claim Number: DAB41867 DU
Date of Loss: September 13, 2005
Your Client: Francesca Tuoni

Dear John:

Please contact me at your earliest convenience to discuss your client's claim in more detail.

I look forward to hearing from you soon.

Thank you.

Sincerely,

Anniece Washington
Metropolitan Direct Property and Casualty Insurance Company
Senior Claim Adjuster
(800) 854-6011 Ext. 5563
Fax: (866) 947-1917

New Mexico state law requires us to notify you of the following: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilt of a crime and may be subject to civil fines and criminal penalties.

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its Affiliates, Warwick, RI

EXHIBIT
12

EXHIBIT A

MetLife Auto & Home®
Dallas Field Claim Office
Mail Processing Center
P.O. Box 410350
Charlotte, NC 28241
(800) 854-6011

MetLife

August 24, 2012

**Via Fax/Mail – 505-883-0724**
John Tiwald Law Firm
6121 Indian School Road NE
Suite 210
Albuquerque, NM 87110-3179

Our Customer: Francesca Tuoni
Claim Number: DAB41867 DU
Date of Loss: September 13, 2005
Your Client: Francesca Tuoni

Dear John Tiwald Law Firm:

It has been some time since we last heard from you. Please contact me at your earliest convenience to discuss the above claim. If you no longer represent Francesca Tuoni in the above matter, please send us a withdrawal letter.

If you have not done so already, please send me any additional copies of your client's medical and wage records for additional consideration.

Please call me with any questions. I look forward to hearing from you soon.

Sincerely,

Anniece Washington
Metropolitan Direct Property and Casualty Insurance Company
Senior Claim Adjuster
(800) 854-6011 Ext. 5563
Fax: (866) 947-1917

New Mexico state law requires us to notify you of the following: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilt of a crime and may be subject to civil fines and criminal penalties.

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its Affiliates, Warwick, RI

MPL ATYCALLBK

EXHIBIT 13

Printed in U.S.A 0698

EXHIBIT A

MetLife Auto & Home®
Dallas Field Claim Office
Mail Processing Center
P.O. Box 410350
Charlotte, NC 28241
(800) 854-6011

MetLife®

January 25, 2013

John Tiwald Law Firm
6121 Indian School Road NE, Suite 210
Albuquerque, NM 87110-3179

Our Customer: Francesca Tuoni
Our Claim Number: DAB41867 DU
Date of Loss: September 13, 2005

Dear John Tiwald Law Firm:

As per our recent conversation, please provide us with updated status for consideration of Francesca Tuoni's continued treatment.

Sincerely,

Anniece Washington
Metropolitan Direct Property and Casualty Insurance Company
Senior Claim Adjuster
(800) 854-6011 Ext. 5563
Fax: (866) 947-1917

New Mexico state law requires us to notify you of the following: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilt of a crime and may be subject to civil fines and criminal penalties.

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its Affiliates, Warwick, RI

MPL 3664

EXHIBIT 14

Printed in U.S.A 0698

EXHIBIT A

MetLife Auto & Home
Dallas Field Claim Office
Mail Processing Center
P.O. Box 410350
Charlotte, NC 28241
(800) 854-6011

MetLife®

December 13, 2013

John Tiwald Law Firm
6121 Indian School Road NE
Suite 210
Albuquerque, NM 87110-3179

| Our Customer: | Francesca Tuoni |
|---|---|
| Claim Number: | DAB41867 DU |
| Date of Loss: | September 13, 2005 |
| Your Client: | Francesca Tuoni |

Dear Mr. Tidwald:

Please contact me at your earliest convenience so that we can move toward resolving your client's claim.

If you have not done so already, please send me additional copies of your client's medical and wage records for further consideration,

Please call me with any questions. I look forward to hearing from you soon. Thank you.

Sincerely,

*Anniece Washington*

Anniece Washington
Metropolitan Direct Property and Casualty Insurance Company
Senior Claim Adjuster
(800) 854-6011 Ext. 5563
Fax: (866) 947-1917

New Mexico state law requires us to notify you of the following: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilt of a crime and may be subject to civil fines and criminal penalties.

EXHIBIT
15

COPY

# JOHN TIWALD, P.C.

Law Firm

*John Tiwald*
*Attorney at Law*

July 18, 2016
Via Express Mail No. 037377651

Anniece Washington
Met Life Insurance Co.
P.O. Box 410350
Charlotte, North Carolina 28241-0350

Re: My Client/Your Customer: Francesca Tuoni
Your Claim No. DAB41867 DU
DOL: 9/13/2005

Dear Ms. Washington:

This letter is written to make a settlement demand in this underinsured motorist case.

## Collision

The collision in this case occurred on September 13, 2005 as your insured Francesca Tuoni was on her way to work at Albuquerque High School where she was a Latin and English-as-a-Second Language teacher. Francesca was driving north on Girard. She was preparing to turn west on Lomas at the intersection and had the green arrow to do so. At-fault driver Melody Ripley, traveling east on Lomas at the intersection with Girard, ran her red light, (traveling 40 mph), and T-boned the driver's side of Francesca's 1989 Volvo sedan at a high rate of speed. The collision occurred just behind the driver's door. Ripley told the investigating officer that she had a green light when she drove into Francesca's car. Witnesses who were also traveling east on Lomas and traveling behind Francesca on Girard said that Melody ran a red light and confirmed that Francesca was making a turn on the green arrow. Not only did Ripley run the red light, she then lied about it to the police officer.

An ambulance came to the scene of the crash and examined Francesca. She experienced headache, neck and back pain immediately afterwards. Francesca had a lapse in consciousness at the time of the crash and doesn't remember anything until people helped her out of her car. Francesca's car had spun to the east from the impact. The collision occurred right in front of Jefferson Middle School. Children who know Francesca saw the collision and came out to help her. Francesca was both concerned about not upsetting the children and not wanting to be late to school. She turned down the EMT's recommendation that she go to the ER. She instead called her daughter to take her in to work.

Francesca experienced a severe hyperflexion injury to her neck as evidenced by the fact that a smudge of red lipstick was found on the front left breast of her white shirt. The lipstick stain was a result of her head and neck snapping down severely in the crash.

Telephone 505 / 883-4133
Fax 505/883-0724
E-Mail: john@tiwaldlaw.com

Suite 210
6121 Indian School Road NE
Albuquerque, New Mexico 87110-3179

EXHIBIT A

MetLife Auto & Home®
Dallas Field Claim Office
Attention: Claims
P.O. Box 6040
Scranton, PA 18505
(800) 854-6011

**MetLife®**

September 29, 2016

Mail/Certified Mail Return Receipt Requested
John Tiwald Law Firm
6121 Indian School Road NE, Suite 210
Albuquerque, NM 87110-3179

| | |
|---|---|
| Our Customer: | Francesca Tuoni |
| Our Claim Number: | DAB41867 DU |
| Date of Loss: | September 13, 2005 |
| Claimant: | Francesca Tuoni |

Dear Mr. Tiwald:

This letter is in response to your recent demand for the Underinsured Motorists policy limits of $100,000, *(herein referenced as "UIM")* of the above insured's policy. Please see the attached copy of our letter dated 4/30/2010 to attorney Robert Avila, who represented Francesca Tuoni at that time. We advised him that the insured had been fairly compensated for her loss from the underlying tort settlement, and therefore we would be unable to extend any UIM offers.

As you are aware, New Mexico has a six year Statute of Limitations on written contracts, inclusive of UM/UIM. Therefore, based on our letter of 4/30/2010, indicating that no UIM offers were being extended, it is our position that the UIM claim is outside the applicable Statute of Limitations. We must respectfully decline to extend any UIM offers to Mrs. Tuoni, since her claim is no longer viable based on our review of the file.

If you have any questions or additional information for our consideration, please feel free to contact me.

Sincerely,

*Anniece Washington*

Anniece Washington
Metropolitan Direct Property and Casualty Insurance Company
Senior Claim Adjuster
(800) 854-6011 Ext. 5563
Fax: (866) 947-1917

New Mexico state law requires us to notify you of the following: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilt of a crime and may be subject to civil fines and criminal penalties.

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its Affiliates, Warwick, RI

MPL NOUIMEXP

Printed in U.S.A 0698

EXHIBIT
17

EXHIBIT A

FILED IN MY OFFICE
DISTRICT COURT CLERK
10/13/2016 11:11:24 PM
James A. Noel
Latoya Grayes

State of New Mexico
County of Bernalillo
Second Judicial District Court

D-202-CV-2016-06414

**Francesca Tuoni**
Plaintiff

v. **No.** ____________________

**Metropolitan Property and Casualty Insurance Company, dba MetLife Auto & Home**
Defendant

## Plaintiff's Certification Regarding Arbitration Under LR2-603

John Tiwald, attorney for Plaintiff, certifies that:

_XX_ This case is not subject to referral to arbitration under Local Rule 2-603 because at least one party seeks relief other than a money judgment and/or at least one party seeks an award in excess of $25,000 exclusive of punitive damages, interest, costs, and attorney's fees.

John Tiwald, P.C.
Attorney for Plaintiffs

By *|s| John Tiwald — for electronic filing*
John Tiwald
6121 Indian School Road NE, Suite 210
Albuquerque, New Mexico 87110-3179
(505) 883-4133
john@tiwaldlaw.com

I certify that the original of the foregoing was filed with the Clerk of the District Court and a copy was served on the Defendants at the same time as service of the Summons and Complaint.

*|s| John Tiwald — for electronic filing*
John Tiwald

**EXHIBIT A**

FILED IN MY OFFICE
DISTRICT COURT CLERK
10/17/2016 10:55:15 AM
James A. Noel
Patsy Baca

State of New Mexico
County of Bernalillo
Second Judicial District Court

**Francesca Tuoni**
Plaintiff

v. **No.** D-202-CV-2016-06414

**Metropolitan Property and Casualty Insurance Company, dba MetLife Auto & Home**
Defendant

# Amended Complaint for Declaratory Judgment, Breach of Contract, and Bad Faith

**This Claim** concerns Plaintiff Francesca Tuoni's underinsured motorist coverage pursuant to her automobile liability insurance policy with Defendant MetLife.

## General Allegations

1. Plaintiff is a resident of Bernalillo County, State of New Mexico.

2. Defendant is an insurer organized and existing under the laws of a state other than New Mexico, but is authorized to conduct business in New Mexico.

3. The insurance contract at issue herein was made between the parties, and delivered to Plaintiff, in Albuquerque, New Mexico.

4. At all times pertinent hereto, Plaintiff was the driver of her car insured by Defendant Metropolitan Property and Casualty Insurance Company dba MetLife Auto & Home (referred to herein as "MetLife"). The insurance policy was issued to Francesca Tuoni, policy no. 0542527760, and was in effect on the date of the collision in this case, September 13, 2005. Attached to this Complaint as **Exhibit 1** is a copy of the declarations page describing the coverage and policy limits applicable to this claim, and the pages describing the Underinsured Motorists Coverage.

EXHIBIT A

5. On September 13, 2005, while driving her insured automobile, Ms. Tuoni was broadsided on the driver's side by a vehicle which ran a red light at a high rate of speed at the intersection of Lomas and Girard in Albuquerque. The driver of the other vehicle was Melody Ripley.

6. The collision was caused by the negligence and carelessness of Melody Ripley.

7. As a direct and proximate result of the collision, Francesca Tuoni has suffered severe personal injuries, impairment, disability, and pain and suffering; she was made to incur medical treatment and bills. She has suffered permanent injury and disability and loss of enjoyment of life.

8. After the collision and as a result of the negligence of Melody Ripley and the injuries suffered by Francesca Tuoni, Ms. Tuoni obtained a policy limits settlement of $25,000 with Ripley's automobile liability insurance carrier. Defendant MetLife gave consent to that policy limits settlement.

9. The policy limits settlement with Ripley's insurance carrier was insufficient to cover the damages incurred by Plaintiff Tuoni, so she made a demand for settlement with Defendant MetLife pursuant to the under-insured motorist provisions of Tuoni's insurance policy, Ex. 1.

10. Plaintiff has performed all conditions precedent to her right to receive insurance proceeds under the MetLife insurance policy for her losses and injuries caused by the negligence and carelessness of Melody Ripley.

11. Despite Plaintiff's settlement demand made to Defendant MetLife, the defendant has failed and refused to offer any amount for settlement of Plaintiff's damages suffered as a result of the collision. Defendant has further stated that the demand is "outside the applicable statute of limitations."

**Declaratory Judgment**

12. Plaintiff incorporates here all other allegations of this Complaint.

13. This action for declaratory judgment is made pursuant to NMSA § 44-6-1 *et seq.*, the Declaratory Judgment Act of New Mexico, and Rule 1-057(A) NMRA, for the purpose of

determining an actual controversy between the parties which is ripe for resolution by this Court.

14. Plaintiff contends that there is underinsured motorist bodily injury coverage in the amount of $100,000 limits available to her under the terms of the insurance policy, subject to reduction by the amount she received from the at-fault driver's insurance carrier.

15. After MetLife consented to the third party settlement of $25,000 on February 26, 2010, the parties engaged in correspondence, production of medical records and information, and exchange of phone calls concerning Ms. Tuoni's medical treatment, injuries, medical expenses, and MetLife's evaluation of the underinsured motorist claim. Specifically the following letters were exchanged with interspersed phone calls. This is not an all-inclusive listing of the letters, because Plaintiff does not possess copies of all correspondence and some is redundant:

> **Exhibit 2**: MetLife to Plaintiff's counsel Robert Avila dated April 6, 2010,
>
> **Ex. 3:** MetLife to Avila dated April 30, 2010, stating: "[W]e believe that the insured has been fairly compensated for her loss, thereby, we will be unable to make any offers at this time."
>
> **Ex. 4:** Avila to MetLife 5/19/2010 asking for a copy of the insurance policy.
>
> **Ex. 5:** MetLife to Avila 5/28/2010 discussing the claim and again stating "[W]e believe that the insured has been fairly compensated for her loss, thereby, we will be unable to make any offers at this time." The letter invites additional information.
>
> **Ex. 6:** Avila to MetLife 7/9/2010 providing further documents, discussing the claim, asking for referral to counsel for arbitration or litigation, and offering an Independent Medical Examination.
>
> **Ex. 7:** MetLife to Avila 7/28/2010: ***"We will respond to your request respectfully [concerning litigation or arbitration and offer of an IME]."*** (emphasis added)
>
> **Ex: 8:** Avila to MetLife 8/25/10 asking for follow-up.
>
> **Ex. 9:** MetLife to Avila 10/13/2010 stating:
>
> > [W]e continue to find it difficult to causally relate the head injury and the significant amount of treatment to the above accident. Therefore, we believe that the insured has been fairly compensated for her loss and will be unable to respond to your request for Arbitration and/or an IME.
> >
> > Looking forward to speaking with you soon regarding this matter.

**Ex. 10:** MetLife to Avila 11/17/2010 asking: "Please contact me at your earliest convenience ***so that we can move toward resolving your client's claim***." (emphasis added)

**Ex. 11:** MetLife to Plaintiff's new counsel John Tiwald 1/9/2012 asking for "medical documentation as it becomes available, ***this will help us maintain proper reserves for this claim***." (emphasis added)

**Ex. 12:** MetLife to Tiwald 5/11/2012 seeking to "discuss your client's claim in more detail."

**Ex. 13:** MetLife to Tiwald 8/24/2012, stating: "[P]lease send me any additional copies of your client's medical and wage records ***for additional consideration***." (emphasis added)

**Ex. 14:** MetLife to Tiwald 1/25/2013: "As per our recent conversation, please provide us with updated status for consideration of Francesca Tuoni's continued treatment."

**Ex. 15:** MetLife to Tiwald 12/13/2013: "Please contact me at your earliest convenience ***so that we can move toward resolving your client's claim***." (emphasis added)

**Ex. 16:** Tiwald to MetLife 7/18/2016 submitting formal settlement package. (This is the first page of the 27-page letter with package of medical records. The complete letter and package of records will be produced to defense counsel and the Court upon request.)

**Ex. 17:** MetLife to Tiwald 9/29/2016. Denial of claim: "[I]t is our position that the UIM claim is outside the applicable statute of limitations."

16. The statute of limitations for making the underinsured motorist claim is settled for New Mexico in the case of *Brooks v. State Farm Insurance Company*, 2007-NMCA-033, 141 N.M. 322 (Ct.App. 2007). The case addresses this question: "When does the six-year limitations period for contract actions begin to accrue on a claim raised under an uninsured motorist policy?" *Brooks*, ¶ 2. The Court of Appeals answers:

> [T]he limitations period for seeking UIM coverage does not begin to run until there is a justiciable claim based on a "failure to do that which is required under the terms of the policy." Until that time, the parties are performing according to the bargained-for obligations under the policy, and there is no cause to seek judicial relief." *Id.* ¶ 15. (internal citations omitted).

17. MetLife's letter of 10/13/2010 (Ex. 9) stated it would not agree to arbitration. This statement was consistent with the insurance policy (Ex. 1) with requires consent of both parties for arbitration.

18. As of MetLife's letter to Tiwald of January 9, 2012 (Ex. 11), MetLife was still performing according to its "bargained-for obligations under the policy," and "there [was] no cause to seek judicial relief. *Brooks* at ¶ 15. Specifically, Defendant requested continued "medical documentation as it becomes available, *this [sic] will help us maintain proper reserves for this claim.*" (Ex. 11, emphasis added).

19. MetLife's letter to Tiwald of January 25, 2013 (Ex. 14), demonstrates that the parties remained engaged in negotiations over the value of the UIM claim in compliance with the insurance contract. *Brooks* at ¶ 20. Specifically, MetLife stated: "As per our recent conversation, please provide us with updated status for consideration of Francesca Tuoni's continued treatment."

20. There exists an actual controversy between the parties concerning whether and when the six-year statute of limitations for bringing this contract action begins to or did accrue.

21. Plaintiff asks the Court to review the insurance contract, the communications between the parties, the facts and circumstances, and the applicable law, and issue its order declaring the parties' respective rights and obligations, determining and awarding the amount of damages incurred by the Plaintiff, and directing the parties' behavior accordingly, all as authorized by statute.

**Breach of Contract**

22. Plaintiff incorporates all other allegations of this Complaint.

23. The insurance policy (Ex. 1) states that Defendant MetLife "will pay damages for bodily injury sustained by you . . . caused by an accident arising out of the . . . use of an underinsured motor vehicle, which you . . . are legally entitled to collect from the owner or driver of an underinsured motor vehicle."

24. Defendant has failed and refused to pay those damages under the terms of the insurance policy.

25. Defendant has breached its contractual obligation to pay the damages incurred by Plaintiff.

26. The refusal to pay the damages in the circumstances of this case is unreasonable.

**Bad Faith**

27. Plaintiff incorporates all other allegations of this Complaint.

28. There is implied in every insurance policy a duty on the part of the insurance company to deal fairly with the policy holder.

29. Fair dealing means to act honestly and in good faith in the performance of the contract.

30. The insurance company must give equal consideration to its own interests and the interests of the policy holder.

31. An insurance company and its employees act in bad faith when they refuse to pay a claim of the policyholder for reasons which are frivolous or unfounded.

32. In deciding whether to pay a claim, the insurance company and its employees must act reasonably under the circumstances.

33. The acts of the Defendant in choosing to deny Plaintiff's claim based on its letter of 4/30/2010 (Ex. 3) was unreasonable and unfair in light of the continuous communications between the parties.

34. The acts of the Defendant in denying the claim in these circumstances was a breach of its duty to give equal consideration to the interests of the policy holder and to its own interests.

35. The acts of the Defendant constitute an unreasonable failure to pay a first party coverage claim, entitling Plaintiff to an award of reasonable attorney fees and costs under NMSA § 39-2-1.

36. The actions of Defendant were willful, reckless, malicious, oppressive, and in bad faith or fraudulent, entitling Plaintiff to recover punitive damages in an amount to be determined.

**Unfair Insurance Claims Practices**

37. Plaintiff incorporates all other allegations of this Complaint.

38. Defendant's denial of the claim constitutes an unfair and deceptive practice and is prohibited by § 59A-16-20, NMSA 1978, as follows:

> 59A-16-20.E: not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear;

39. Defendant's denial of the claim is a bad faith breach of its duty to act honestly and in good faith. *Travelers Insurance Co. v. Montoya*, 90 N.M. 556, 566 P.2d 105 (Ct.App.1977); UJI 13-1702 NMRA; and other New Mexico case law.

**Wherefore** Plaintiff asks the court for judgment against Defendant as follows:

A. For this Court's order determining the rights and liabilities of the parties as to insurance policy proceeds due and payable under the policy of insurance, and directing the parties to act in accordance therewith;

B. For an award in favor of Plaintiff and against Defendant in an amount sufficient to compensate Plaintiff for all damages, injuries, and losses which she is legally entitled to collect from the owner or driver of the underinsured motor vehicle;

C. For punitive damages, attorney fees, costs, and interest recoverable under the law;

D. For her attorney fees and costs pursuant to § 39-2-1, NMSA.

E. For prejudgment interest;

F. For such other and additional relief as is proper under the law.

Respectfully submitted,

**John Tiwald, P.C.**
**Attorney for Plaintiff**

By *<u>/s/ John Tiwald – Electronically filed</u>*

John Tiwald, Attorney at Law
6121 Indian School Road NE, Suite 210
Albuquerque, New Mexico 87110-3179
(505) 883-4133
john@tiwaldlaw.com

Automobile Insurance Declarations SI 30
Page 1 of 2

Policy Number: 0542527760
Policy Effective Date: 06-01-2005
Policy Expiration Date: 12-01-2005
At: 12:01 A.M.

Renewal Effective Date: 06-01-2005

Named Insured:

FRANCESCA TUONI
327 TULANE PL NE
ALBUQUERQUE NM 87106

You have selected our Payroll Deduction Plan. Your premium includes the Payroll Deduction Discount.

**Insured Vehicle(s)**

| Veh | Year | Make | Model | Body Type | Vehicle ID Number | Sym | Territory |
|---|---|---|---|---|---|---|---|
| 1 | 1989 | VOLVO | 240 | 4DR | YV1AX8842KH337072 | 10 | 07 |

| Coverage Description | Applicable Limits | Semi-Annual Premiums 1989 VOLVO |
|---|---|---|
| **Liability** | | |
| Bodily Injury | $ 100,000 Per Person/ $ 300,000 Per Occurrence | 65 |
| Property Damage | $ 50,000 Per Occurrence | 52 |
| Medical Expense | $ 5,000 Per Person | 11 |
| **Physical Damage** | 1989 VOLVO | |
| Actual Cash Value(ACV) or Limit | ACV | |
| Collision less deductible | $ 100 | 61 |
| Comprehensive less deductible | $ 50 | 28 |
| Towing and Labor Limit | $ 50 | Incl |
| **Optional Coverages** | | |
| Substitute Transportation | $25 Day/ $750 Occurrence | 16 |
| | **Vehicle Totals:** | 233 |
| | **Total For All Vehicles:** | 233 |
| **Uninsured/Underinsured Motorists** | | |
| Bodily Injury | $ 100,000 Per Person/ $ 300,000 Per Accident | 37 |
| Property Damage | $ 10,000 Per Accident | 3 |
| | **Total Semi-Annual Premium:** | 273 |

**Deductible Savings Benefit (DSB) $ 200**

Deductible Savings reduces Collision or Comprehensive deductibles, excluding towing and glass claims, effective 06-01-2005 for claims occurring after this date. Your next anniversary date is 06-01-2006. See Important Notice for detail

**Forms and Endorsements**
MPL 6010-000 NM400A NM700 V550 V934

MetLife® Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its Affiliates, Warwick, RI

MPL 1380-000

EXHIBIT 1

Printed in U.S.A.

EXHIBIT A

**uninsured motor vehicle,** which **you** or a **relative** are legally entitled to collect from the owner or driver of an **uninsured motor vehicle;** or

2. any other person, caused by an accident while **occupying** a **covered automobile,** who is legally entitled to collect from the owner or driver of an **uninsured motor vehicle.**

**We** will also pay damages to any person for damages that person is entitled to recover because of **bodily injury** sustained by anyone described in 1. or 2. above.

## UNDERINSURED MOTORISTS COVERAGE

This coverage is provided only if a premium is shown in the Declarations.

**We** will pay damages for **bodily injury** sustained by:

1. **you** or a **relative,** caused by an accident arising out of the ownership, maintenance, or use of an **underinsured motor vehicle,** which **you** or a **relative** are legally entitled to collect from the owner or driver of an **underinsured motor vehicle;** or
2. any other person, caused by an accident while **occupying** a **covered automobile,** who is legally entitled to collect from the owner or driver of an **underinsured motor vehicle.**

**We** will also pay damages to any person for damages that person is entitled to recover because of **bodily injury** sustained by anyone described in 1. or 2. above.

## COVERAGE EXCLUSIONS

**We** do not cover:

A. any person **occupying** or struck by a **motor vehicle** owned by **you** or a **relative,** other than a **covered automobile.**

B. any person who settles a **bodily injury** claim, with any liable party, without **our** written consent.

C. any claim which would benefit any insurer or self-insurer under any workers compensation, disability benefits, or similar law.

D. any claim for which benefits are provided under the Personal Injury Protection or Medical Expense coverage of this policy.

E. any person, other than **you,** or a **relative,** while **occupying:**

1. a **covered automobile** while it is being used to carry persons or property for a fee.

   EXCEPTION: This exclusion does not apply to shared expense car pools.

2. a vehicle while being used without the permission of the owner.

F. **bodily injury** or **property damage** awards designated as punitive, exemplary, or statutory multiple damages.

G. a **relative** who owns, leases or has available for their regular use, a **motor vehicle** not described in the Declarations.

EXHIBIT A

**SETTLEMENT**

Whether any person is legally entitled to collect damages under this section, and the amount to which such person is entitled, will be determined by agreement between that person and **us.** Upon written consent of both parties, any disagreement will be settled by arbitration.

When arbitration applies, it will take place under the rules of the American Arbitration Association, unless other means are required by law or are agreed to by the injured party and **us.**

If a person seeking coverage files a suit against the owner or driver of the **uninsured** or **underinsured motor vehicle,** copies of suit papers must be forwarded to **us** and **we** have the right to defend on the issues of the legal liability of, and the damages owed by, such owner or driver. However, **we** are not bound by any judgment against any person or organization obtained without **our** written consent.

**LIMIT OF LIABILITY**

The limit of liability shown in the Declarations for "each person" is the most **we** will pay for all damages, including damages for care, loss of consortium, emotional distress, loss of services or death, arising out of **bodily injury** sustained by any one person as the result of any one accident. Subject to this limit for "each person", the limit shown in the Declarations for "each accident" for **bodily injury** liability, is the most **we** will pay for all damages, including damages for care, loss of consortium, emotional distress, loss of services or death, arising out of **bodily injury** sustained by two or more persons resulting from any one accident. This is the most **we** will pay regardless of the number of:

1. covered persons;

2. claims made;

3. vehicles or premiums shown in the Declarations; or

4. vehicles involved in the accident.

**REDUCTIONS**

The lesser of the limits of this insurance or the amount payable under this coverage will be reduced by any amount:

1. paid by or on behalf of any liable parties.

2. paid or payable under any workers compensation, disability benefits or similar laws.

3. paid or payable under the **AUTOMOBILE LIABILITY** section of this policy.

**OTHER INSURANCE**

If there is other similar insurance, **we** will pay only **our** fair share. The total amount of recovery under all policies will be limited to the highest of the applicable limits of liability of this insurance and such other insurance.

**Our** fair share is the proportion that **our** limit bears to the total of all applicable limits. However, if **you** do not own the **motor vehicle, our** insurance will be excess over other similar uninsured or underinsured insurance available but only in the amount by which the limit of liability of this policy exceeds the limits of liability of the other available insurance. If there is other excess or contingent insurance, **we** will pay **our** fair share.

972 METLIFE 10· ·57 a.m. 04-06-2010 1 /3

MetLife Auto & Home®
Dallas Field Claim Office
Mail Processing Center
P.O. Box 410350
Charlotte, NC 28241
(800) 854-6011

MetLife

April 6, 2010

**Via Fax – 505-247-4284**
Robert Avila
P.O. Box 1966
Albuquerque, NM 87103

| | |
|---|---|
| Our Customer: | Francesca Tuoni |
| Our Claim Number: | DAB41867 DU |
| Date of Loss: | September 13, 2005 |
| Your Client: | Francesca Russo |
| Your File Number: | |

Dear Robert Avila:

As per our recent conversation, enclosed is an unofficial copy of the Dec Page for the insured showing UM/UIM coverages. We also note that we have received via fax from your office today, a copy of the adverse carrier's settlement agreement and settlement check. You have also informed that you are in the process of obtaining one additional record and bill to add to our evaluation of which we hope to receive prior to the completion of the evaluation .

Also as discussed, we are in the process of completing our evaluation and will respond accordingly within three weeks and/or by April 19, 2010.

If you have any questions in the meantime, please give me a call.

Sincerely,

Annjecee Washington
Metropolitan Direct Property and Casualty Insurance Company
Senior Claim Adjuster
(800) 854-6011 Ext. 5563
Fax: (866) 947-1917

New Mexico state law requires us to notify you of the following: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilt of a crime and may be subject to civil fines and criminal penalties.

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its Affiliates, Warwick, RI

MPL SETACK

EXHIBIT
2

Printed in U.S.A 0698

EXHIBIT A

MetLife Auto & Home®
Dallas Field Claim Office
Mail Processing Center
P.O. Box 410350
Charlotte, NC 28241
(800) 854-6011

APR 30 2010

MetLife®

April 30, 2010

**Via Fax – 505-247-4284**
Robert Avila
P. O. Box 1966
Albuquerque, NM 87103

Our Customer: Francesca Tuoni
Our Claim Number: DAB41867 DU
Date of Loss: September 13, 2005
Your Client: Francesca Tuoni

Dear Bob:

As per our recent conversation regarding settlement for the above Underinsured Motorist bodily injury claim (herein) UMBI, we believe that the insured has been fairly compensated for her loss, thereby, we will be unable to make any offers at this time.

If you would still like to discuss this further to go over the medical records, I would be happy to do so.

Please contact me once you have discussed this with your client. Thank you.

We look forward to hearing from you soon.

Sincerely,

Anniece Washington
Metropolitan Direct Property and Casualty Insurance Company
Senior Claim Adjuster
(800) 854-6011 Ext. 5563
Fax: (866) 947-1917

New Mexico state law requires us to notify you of the following: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilt of a crime and may be subject to civil fines and criminal penalties.

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its Affiliates, Warwick, RI

MPL OFFERAT

EXHIBIT 3

Printed in U.S.A 0698

EXHIBIT A

Mailing: *Robert J. Avila, P.A.* Office:

P.O. Box 1966
Albuquerque, NM 87103
Fax (505) 247-4284

Attorney & Counselor At Law
E.Mail: rjavila@qwestoffice.net

115 8th Street, SW
Albuquerque, NM 87102
Phone: (505) 247-4321

May 19, 2010

Anniece Washington
MetLife
P.O. Box 410350
Charlotte, NC 28241-0350

**RE: My Client/Your Insured: Francesca Tuoni**
**Your Claim No.: DAB418670**
**Date of Loss: September 13, 2005**

Dear Anniece:

I had hoped to speak with you last week as we had planned, but you have not returned my phone call. Pursuant to our conversation it would appear that you may have overlooked all of the references regarding Ms. Tuoni's head injury and/or confused the other bodily injuries with the issues related to her head injury.

I would ask that you review these highlighted portions of her medical records in order to link the initial injury with her subsequent care. You stated to me in our telephone conversation that she did not complain of a head injury until over one year after the collission. As you will see with the enclosed records, Ms. Tuoni was complaining immediately after the collision of pressure in the back of her head, as well as dizziness, memory loss and inability to hold certain words. As she continued to receive medical care many of these symptoms did resolve. The doctors who were treating her, however, felt that she may have suffered a traumatic brain injury and therefore recommended the neurological testing.

I want to clearly establish that this office never prescribed nor recommended any particular care, but did, however, discuss with Ms. Tuoni the various types of imaging and testing that are available with a potential closed head injury. This is not only appropriate, but it is essential for counsel to explore the realm of medical care in the context of her concerns about her injury.

We have requested from MetLife on numerous occasions a copy of her policy of insurance. This has yet to arrive. In the event you do not change your position regarding Ms. Tuoni receiving full compensation for her claim, there must be a determination on how the claim will be resolved. There should be policy provisions that addresses dispute resolution. This production, however,

**EXHIBIT A**

does not cure the fact that your company has not provided the policy of insurance after numerous requests for review.

We are also very concerned you are not only discounting her head injury, but also the chronic and permanent nature of the cervical spine injury. By denying her coverage from her underinsured motorist you are not attempting in good faith to effectuate a prompt, fair and equitable settlement of her claim in which liability has become reasonably clear. You are also compelling your insured to institute litigation to recover amounts due under the policy by offering her nothing.

Your letter of April 30, 2010 contains no statement whatsoever regarding the basis of your determination that you *"believe that the insured has been fairly compensated for her loss, thereby, we will be unable to make any offer at this time."* Your insured hereby demands that should you maintain this position, after having reviewed the highlighted information herein, that you provide a reasonable explanation of the basis upon which you rely upon to deny her claim. This should be specific and directly relate to medical records and your determination as to the value of her claim. Your insured is entitled to a specific, concise statement as to all reasons for denial of her claim pursuant to New Mexico Law.

Given the permanent nature of her cervical spine injuries as well as the closed head injury that Ms. Tuoni suffered, she needs your help more than ever to resolve her claim. People necessarily look to their insurance company for relief as they believe that their company will act in good faith at all times.

Please contact me upon receipt. We expect an answer within ten (10) days and immediate production of her policy of insurance.

Sincerely,

ROBERT J. AVILA
Attorney at Law

Enclosure: as stated

RJA/rp

cc: Francesca Tuoni

MetLife Auto & Home®
Dallas Field Claim Office
Mail Processing Center
P.O. Box 410350
Charlotte, NC 28241
(800) 854-6011

JUN 02 2010

**MetLife**®

May 28, 2010

**Fax Via (505) 247-4284**
Robert J. Avila, P.A.
P. O. Box 1966
Albuquerque, NM 87103

| | |
|---|---|
| Our Customer: | Francesca Tuoni |
| Our Claim Number: | DAB41867 DU |
| Date of Loss: | September 13, 2005 |
| Your Client: | Francesca Tuoni |

Dear Mr. Avila:

This letter is to acknowledge your letter dated May 19, 2010. In your letter you assert that we may have overlooked all of the references regarding Ms. Tuoni's head injury and/or have confused the other bodily injuries with issues related to her head injury. You have also confirmed via voicemail, that you have received a certified copy of the insured's policy.

We have completed our review of the medical records provided by your office. The medical records reveal that Ms. Tuoni treated on the date of loss for pain in the right side of her neck and shoulder. She advised at that time she had no loss of consciousness. She was diagnosed with a cervical strain and recommended heat and ice. Later that month, Ms. Tuoni sought treatment for complaints of right anterior chest pain with chest x-ray which was normal. She was referred for physical therapy, but sought massage therapy instead. According to the medical records, theses initial complaints of neck and chest resolved.

The insured sought treatment on the scene by EMS, we have no records of this encounter to review for any complaints of head injury. Our findings on exams by PMR (Garza) and 3 neurologists was mildly decreased cervical range of motion and some tenderness. No neurological symptoms, nor changes in motor sensory. Due to these findings it is difficult to casually relate a closed head injury or concussion as a result of the above accident. We also find that no diagnosis was made of possible post-traumatic brain injury until 1 year later. All testing for possible head injury was normal, (Brain MRI, EEG) as well as the neuropsychological evaluation was inconsistent with brain injury. The psychologist noted no malingering, but that the claimant was pre-occupied with her health.

The insured sought treatment for 4 years as a result of the above accident and after careful review and evaluation of her claim, we find it difficult to casually relate the significant amount of treatment to the above accident.

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its Affiliates, Warwick, RI

MPL SETACK

EXHIBIT 5

Printed in U.S.A 0698

EXHIBIT A

We also have requested to obtain missing records to review the specialist reports. This request included obtaining records from the following:

EMS for date of loss
Chiropractor Dr. Russo after 8/30/2006 to present, he also ordered current Physical Therapy
Mr. Fahey, MT regarding Rolfing Testing, was this ever done.
John Sloan MD, he ordered the lumbar MRI and several of the consults.

Thank you for your time in this matter, however, based on the above evaluation, we believe that the insured has been fairly compensated for her loss, thereby, will be unable to make any offers at this time.

If you would like to discuss further or have any additional information you would like to add, please feel free to contact me at the number listed below.

Sincerely,

Annlece Washington
Metropolitan Direct Property and Casualty Insurance Company
Senior Claim Adjuster
(800) 854-6011 Ext. 5563
Fax: (866) 947-1917

New Mexico state law requires us to notify you of the following: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilt of a crime and may be subject to civil fines and criminal penalties.

Mailing:
P.O. Box 1966
Albuquerque, NM 87103
Fax 505.247.4284

*Robert J. Avila, P.A.*
Attorney & Counselor At Law
E.Mail: rjavila@qwestoffice.net

Office:
115 8th Street, SW
Albuquerque, NM 87102
Phone: 505.247.4321

July 9, 2010

Anniece Washington
MetLife
P.O. Box 410350
Charlotte, NC 28241-0350

**RE: My Client/Your Insured: Francesca Tuoni**
**Your Claim No.: DAB418670**
**Date of Loss: September 13, 2005**

Dear Ms. Washington:

I appreciate your allowing me the opportunity to provide you with additional requested medical records. We enclose the following:

1. Albuquerque Fire Department Incident Report, 09.13.05
2. Francesca Russo, D.C., B.C.A.O. records from November 2006 to 4.20.10
3. Brian W. Fahey, faxed 06.08.10
4. Dr. Sloan report 01.21.07

The Albuquerque Fire Department (AFD) report that we obtained, based on your request, establishes the head and body trauma suffered by Ms. Tuoni was caused by the high impact collision. AFD arrived soon after the collision and assessed Ms. Tuoni for trauma. She described her injuries to the neck and as suffering from an immediate onset of headache and overall body trauma. The EMS detailed her trauma in the report. A person does not have to lose consciousness to have suffered a closed head injury. (Please access the Center for Disease Control website, traumatic brain injury, concussion syndrome for extensive authority substantiating this statement). The records establish head trauma symptoms at the time of the collision.

I have attached for you the records that we received from Dr. Russo from August 30, 2006 to present, as requested. The November 8, 2006 report states Ms. Tuoni's condition is unchanged and that Dr. Russo would henceforth provide support on a palliative/supportive basis because her Atlas had held for four months. Ms. Tuoni returned in October of 2006 and again in October 2008 when her Atlas would cause her difficulty. She returned for treatments in July 2009 through April 2010 with her symptoms unchanged and painful. You will note that when she carried



groceries, it aggravated her condition. This loss of household services must be considered by you in your evaluation of her chronic condition.

We inquired as to Dr. Fahey's [sic] reports per your request. We understand that Francesca Tuoni visited Mr. Fahey in 2006. Mr. Fahey is not a licensed practitioner; therefore, Ms. Tuoni did not receive any care from him and sought out another Physical Therapist, Terry Kern, P.T. However, we attach a copy of the correspondence from Mr. Fahey's office to the effect that the records she brought in were returned to Ms. Tuoni and that he did not generate any records.

We also are attaching the records that we have received from Dr. Sloan in regards to the MRI. Dr. Sloan is one of several physicians at Manzano Medical Group. We directed this request to Dr. Sloan, as opposed to the group and were able obtain the attached report. Dr. Sloan met with Ms. Tuoni in January 2006. She was suffering from chronic pain, pressure, numbness and tingling in various parts of her body. After examination she was diagnosed with chronic pain. Chronic conditions are deemed permanent and, indeed, she continues to suffer to this date. It is incredulous that you determine she is not entitled to compensation for a lifetime of pain and suffering related to her bodily injuries and all the consequences therefrom that affect every aspect of her life because you believe she didn't suffer trauma to the head.

I respectfully disagree with the analysis you provided in your short form letter. Ms. Tuoni repeatedly complained of numerous symptoms which are consistent with a closed head injury/concussion.

On May 19, 2010, we provided you with extensive medical records wherein we highlighted all of the symptoms consistent with a head injury one year post collision. For example, the November 14, 2005 records where she indicated that she couldn't remember phone numbers and suffered from anxiety. Occipital and suboccipital tenderness was noted. The "pressure" she feels is in the back of the head and she had buzzing episodes. The accident report on the day of the collision she complained of being light headed, memory loss and loss of balance, all consistent with the mechanics of her injury. The first year records also reflect dizziness, nausea and blurred vision. The May 2006 records of Dr. Russo notes a possible brain trauma. The brain is very soft tissue and is encased in the skull and when her head was thrown so far forward as to leave a lipstick stain on her blouse, we know the flexion and extension was severe, with the brain colliding against the walls of the skull. We provided this to your office after you indicated there was no symptomology related to her closed head injury until one year post incident. You repeat this unfounded position in your most recent correspondence.

You have required the insured to submit, now threefold, medical records for her claim. We believe that your explanation is insufficient in regards to your statutory duty to inform your insured of the reason for denial of her claim. Although you take issue with her head injury, you have completely ignored the other chronic neck and back injuries, loss of household services and loss of enjoyment of life in your evaluation.

After your review of these documents, should your office decide to maintain your position that Ms. Tuoni is not entitled to further recovery, we request that you advise who your choice of counsel here in New Mexico is so that we may discuss the issues of whether this matter will proceed to Litigation or Arbitration. You may also wish to consider an IME. This office is always amendable to alternative dispute resolution and you may wish to discuss this with MetLife.

Your prompt review of these materials would be greatly appreciated.

Cordially,

ROBERT J. AVILA
Attorney at Law

cc: Francesca Tuoni *(w/o enclosures)*

Encls.: *as stated*

MetLife Auto & Home®
Dallas Field Claim Office
Mail Processing Center
P.O. Box 410350
Charlotte, NC 28241
(800) 854-6011

AUG 02 2010

MetLife

July 28, 2010

**Via Fax – 505-247-4284**
Robert Avila
P. O. Box 1966
Albuquerque, NM 87103

| | |
|---|---|
| Our Customer: | Francesca Tuoni |
| Our Claim Number: | DAB41867 DU |
| Date of Loss: | September 13, 2005 |
| Your Client: | Francesca Tuoni |

Dear Avila:

Thank you for providing us with the additional requested information. As per our conversation of 07/28/2010 and after careful review of the additional medical records and as per our letter dated May 28, 2010, our evaluation remains unchanged. The Albuquerque Fire Department Ambulance Report indicated that the insured was ambulatory at the scene, denied loss of consciousness, was alert and oriented and complained of minor pain to the right lateral neck and headache.

Again based on our continued evaluation of the prior and/or recent medicals provided, we continue to find it difficult to causally relate the head injury and the significant amount of treatment to the above accident. Therefore, we believe that the insured has been fairly compensated for her loss, and will be unable to make any offers at this time.

You have requested that we advise you of our choice of counsel in New Mexico so that we may discuss the issue of whether this matter will proceed to Litigation and/or Arbitration. You have also requested that we consider an IME. We will respond to your request respectfully.

Looking forward to speaking with you soon regarding the above matter.

Sincerely,

Ahmece Washington
Metropolitan Direct Property and Casualty Insurance Company
Senior Claim Adjuster
(800) 854-6011 Ext. 5563
Fax: (866) 947-1917

New Mexico state law requires us to notify you of the following: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilt of a crime and may be subject to civil fines and criminal penalties.

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its Affiliates, Warwick, RI

MPL OFFERAT

Printed in U.S.A 0698

EXHIBIT
7
EXHIBIT A

*Robert J. Avila P.A.*
ATTORNEY AND COUNSELOR AT LAW
Ph 505.247.4321 | Fx 505.247.4284
Office: 115 8th Street, SW | Mailing: P.O. Box 1966 | Albuquerque, NM 87103
Email: rjavila@qwestoffice.net

August 25, 2010

Anniece Washington
MetLife
P.O. Box 410350
Charlotte, NC 28241-0350

**RE: My Client/Your Insured: Francesca Tuoni**
**Your Claim No.: DAB418670**
**Date of Loss: September 13, 2005**

Dear Anniece:

We have not heard from you regarding choice of local counsel nor have I received a phone call. If the file is in transit, please advise.

I appreciate your prompt response.

Cordially,

ROBERT J. AVILA
Attorney at Law

cc: Francesca Tuoni

RJA/rp

EXHIBIT A

972 METLIFE 08:42:27 a.m. 10-14-2010 1 /1

MetLife Auto & Home®
Dallas Field Claim Office
Mail Processing Center
P.O. Box 410350
Charlotte, NC 28241
(800) 854-6011

MetLife

October 13, 2010

Via Fax – (505) 247-4284
Robert J. Avila P. A. Attorney and Counselor at Law
115 8th Street , SW
P.O. Box 1966
Albuquerque, NM 87103

| | |
|---|---|
| Our Customer: | Francesca Tuoni |
| Our Claim Number: | DAB41867 DU |
| Date of Loss: | September 13, 2005 |
| Your Client: | Francesca Tuoni |

Dear Mr. Avila:

In response to your recent letter and based on our continued evaluation of the above claim, we continue to find it difficult to causally relate the head injury and the significant amount of treatment to the above accident. Therefore, we believe that the insured has been fairly compensated for her loss and will be unable to respond to your request for Arbitration and/or an IME.

Looking forward to speaking with you soon regarding the above matter.

Sincerely,

Anniece Washington
Metropolitan Direct Property and Casualty Insurance Company
Senior Claim Adjuster
(800) 854-6011 Ext. 5563
Fax: (866) 947-1917
Email: awashington@metlife.com

New Mexico state law requires us to notify you of the following: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilt of a crime and may be subject to civil fines and criminal penalties.

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its Affiliates, Warwick, RI

MPL OFFERAT Printed in U.S.A. 0598

EXHIBIT
9

EXHIBIT A

MetLife Auto & Home®
Dallas Field Claim Office
Mail Processing Center
P.O. Box 410350
Charlotte, NC 28241
(800) 854-6011

NOV 2

November 17, 2010

Robert Avila
P. O. Box 1966
Albuquerque, NM 87103

Our Customer: Francesca Tuoni
Claim Number: DAB41867 DU
Date of Loss: September 13, 2005
Your Client: Francesca Tuoni

Dear Robert Avila:

Please contact me at your earliest convenience so that we can move toward resolving your client's claim.

I look forward to hearing from you soon.

Thank you.

Sincerely,

Anniece Washington
Metropolitan Direct Property and Casualty Insurance Com[illegible]
Senior Claim Adjuster
(800) 854-6011 Ext. 5563
Fax: (866) 947-1917

New Mexico state law requires us to notify you of the following: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilt of a crime and may be subject to civil fines and criminal penalties.

MetLife Auto & Home®
Dallas Field Claim Office
Mail Processing Center
P.O. Box 410350
Charlotte, NC 28241
(800) 854-6011

MetLife®

January 9, 2012

RECEIVED
JAN 12 2012

John Tiwald Law Firm
6121 Indian School Road NE, Suite 210
Albuquerque, NM 87110-3179

Our Customer: Francesca Tuoni
Claim Number: DAB41867 DU
Date of Loss: September 13, 2005
Your Client: Francesca Tuoni

Dear John :

Thank you for your letter acknowledging that you represent Francesca Russo for the accident that occurred on September 13, 2005. Please help us in obtaining this pertinent information:

- Names of attending physicians
- Current status of injury
- Exact diagnosis, prognosis, and estimated length of treatment
- Known wage loss to date, anticipated future wage loss, and anticipated date of return to work.
- All office notes as well as initial, intermediate, and final reports for treating physicians.
- All related medical bills **(each bill should contain CPT and ICD-9 codes as well as a tax identification number for each provider).**

Please be sure to forward medical documentation as it becomes available, this will help us maintain proper reserves for this claim. If you have any questions about this request or your client's claims in general, please call me. Thank you.

Sincerely,

Anniece Washington
Metropolitan Direct Property and Casualty Insurance Company
Senior Claim Adjuster
(800) 854-6011 Ext. 5563
Fax: (866) 947-1917

New Mexico state law requires us to notify you of the following: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilt of a crime and may be subject to civil fines and criminal penalties.

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its Affiliates, Warwick, RI

EXHIBIT A

MetLife Auto & Home®
Dallas Field Claim Office
Mail Processing Center
P.O. Box 410350
Charlotte, NC 28241
(800) 854-6011

MetLife®

May 11, 2012

John Tiwald Law Firm
6121 Indian School Road NE
Suite 210
Albuquerque, NM 87110-3179

| | |
|---|---|
| Our Customer: | Francesca Tuoni |
| Claim Number: | DAB41867 DU |
| Date of Loss: | September 13, 2005 |
| Your Client: | Francesca Tuoni |

Dear John:

Please contact me at your earliest convenience to discuss your client's claim in more detail.

I look forward to hearing from you soon.

Thank you.

Sincerely,

Anniece Washington
Metropolitan Direct Property and Casualty Insurance Company
Senior Claim Adjuster
(800) 854-6011 Ext. 5563
Fax: (866) 947-1917

New Mexico state law requires us to notify you of the following: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilt of a crime and may be subject to civil fines and criminal penalties.

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its Affiliates, Warwick, RI

MPL ATYCALLBK

Printed in U.S.A 0698

EXHIBIT
12

EXHIBIT A

MetLife Auto & Home®
Dallas Field Claim Office
Mail Processing Center
P.O. Box 410350
Charlotte, NC 28241
(800) 854-6011

August 24, 2012

**Via Fax/Mail – 505-883-0724**
John Tiwald Law Firm
6121 Indian School Road NE
Suite 210
Albuquerque, NM 87110-3179

| | |
|---|---|
| Our Customer: | Francesca Tuoni |
| Claim Number: | DAB41867 DU |
| Date of Loss: | September 13, 2005 |
| Your Client: | Francesca Tuoni |

Dear John Tiwald Law Firm:

It has been some time since we last heard from you. Please contact me at your earliest convenience to discuss the above claim. If you no longer represent Francesca Tuoni in the above matter, please send us a withdrawal letter.

If you have not done so already, please send me any additional copies of your client's medical and wage records for additional consideration.

Please call me with any questions. I look forward to hearing from you soon.

Sincerely,

Anniece Washington
Metropolitan Direct Property and Casualty Insurance Company
Senior Claim Adjuster
(800) 854-6011 Ext. 5563
Fax: (866) 947-1917

New Mexico state law requires us to notify you of the following: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilt of a crime and may be subject to civil fines and criminal penalties.

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its Affiliates, Warwick, RI

MPL ATYCALLBK

Printed in U.S.A 0698

EXHIBIT
13

EXHIBIT A

MetLife Auto & Home
Dallas Field Claim Office
Mail Processing Center
P.O. Box 410350
Charlotte, NC 28241
(800) 854-6011

MetLife®

January 25, 2013

John Tiwald Law Firm
6121 Indian School Road NE, Suite 210
Albuquerque, NM 87110-3179

Our Customer: Francesca Tuoni
Our Claim Number: DAB41867 DU
Date of Loss: September 13, 2005

Dear John Tiwald Law Firm:

As per our recent conversation, please provide us with updated status for consideration of Francesca Tuoni's continued treatment.

Sincerely,

Anniece Washington
Metropolitan Direct Property and Casualty Insurance Company
Senior Claim Adjuster
(800) 854-6011 Ext. 5563
Fax: (866) 947-1917

New Mexico state law requires us to notify you of the following: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilt of a crime and may be subject to civil fines and criminal penalties.

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its Affiliates, Warwick, RI

MPL 3664

EXHIBIT 14

Printed in U.S.A 0698

EXHIBIT A

MetLife Auto & Home®
Dallas Field Claim Office
Mail Processing Center
P.O. Box 410350
Charlotte, NC 28241
(800) 854-6011

MetLife®

December 13, 2013

John Tiwald Law Firm
6121 Indian School Road NE
Suite 210
Albuquerque, NM 87110-3179

Our Customer: Francesca Tuoni
Claim Number: DAB41867 DU
Date of Loss: September 13, 2005
Your Client: Francesca Tuoni

Dear Mr. Tidwald:

Please contact me at your earliest convenience so that we can move toward resolving your client's claim.

If you have not done so already, please send me additional copies of your client's medical and wage records for further consideration,

Please call me with any questions. I look forward to hearing from you soon. Thank you.

Sincerely,

*Anniece Washington*

Anniece Washington
Metropolitan Direct Property and Casualty Insurance Company
Senior Claim Adjuster
(800) 854-6011 Ext. 5563
Fax: (866) 947-1917

New Mexico state law requires us to notify you of the following: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilt of a crime and may be subject to civil fines and criminal penalties.

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its Affiliates, Warwick, RI

MPL ATYCALLBK

EXHIBIT
15

Printed in U.S.A 0698

EXHIBIT A

# JOHN TIWALD, P.C.

Law Firm

COPY

*John Tiwald*
*Attorney at Law*

July 18, 2016
Via Express Mail No. 037377651

Anniece Washington
Met Life Insurance Co.
P.O. Box 410350
Charlotte, North Carolina 28241-0350

Re: My Client/Your Customer: Francesca Tuoni
Your Claim No. DAB41867 DU
DOL: 9/13/2005

Dear Ms. Washington:

This letter is written to make a settlement demand in this underinsured motorist case.

## Collision

The collision in this case occurred on September 13, 2005 as your insured Francesca Tuoni was on her way to work at Albuquerque High School where she was a Latin and English-as-a-Second Language teacher. Francesca was driving north on Girard. She was preparing to turn west on Lomas at the intersection and had the green arrow to do so. At-fault driver Melody Ripley, traveling east on Lomas at the intersection with Girard, ran her red light, (traveling 40 mph), and T-boned the driver's side of Francesca's 1989 Volvo sedan at a high rate of speed. The collision occurred just behind the driver's door. Ripley told the investigating officer that she had a green light when she drove into Francesca's car. Witnesses who were also traveling east on Lomas and traveling behind Francesca on Girard said that Melody ran a red light and confirmed that Francesca was making a turn on the green arrow. Not only did Ripley run the red light, she then lied about it to the police officer.

An ambulance came to the scene of the crash and examined Francesca. She experienced headache, neck and back pain immediately afterwards. Francesca had a lapse in consciousness at the time of the crash and doesn't remember anything until people helped her out of her car. Francesca's car had spun to the east from the impact. The collision occurred right in front of Jefferson Middle School. Children who know Francesca saw the collision and came out to help her. Francesca was both concerned about not upsetting the children and not wanting to be late to school. She turned down the EMT's recommendation that she go to the ER. She instead called her daughter to take her in to work.

Francesca experienced a severe hyperflexion injury to her neck as evidenced by the fact that a smudge of red lipstick was found on the front left breast of her white shirt. The lipstick stain was a result of her head and neck snapping down severely in the crash.

Telephone 505 / 883-4133
Fax 505/883-0724
E-Mail: john@tiwaldlaw.com

Suite 210
6121 Indian School Road NE
Albuquerque, New Mexico 87110-3179

EXHIBIT A

MetLife Auto & Home®
Dallas Field Claim Office
Attention: Claims
P.O. Box 6040
Scranton, PA 18505
(800) 854-6011

MetLife®

September 29, 2016

Mail/Certified Mail Return Receipt Requested
John Tiwald Law Firm
6121 Indian School Road NE, Suite 210
Albuquerque, NM 87110-3179

| | |
|---|---|
| Our Customer: | Francesca Tuoni |
| Our Claim Number: | DAB41867 DU |
| Date of Loss: | September 13, 2005 |
| Claimant: | Francesca Tuoni |

Dear Mr. Tiwald:

This letter is in response to your recent demand for the Underinsured Motorists policy limits of $100,000, (*herein referenced as "UIM")* of the above insured's policy. Please see the attached copy of our letter dated 4/30/2010 to attorney Robert Avila, who represented Francesca Tuoni at that time. We advised him that the insured had been fairly compensated for her loss from the underlying tort settlement, and therefore we would be unable to extend any UIM offers.

As you are aware, New Mexico has a six year Statute of Limitations on written contracts, inclusive of UM/UIM. Therefore, based on our letter of 4/30/2010, indicating that no UIM offers were being extended, it is our position that the UIM claim is outside the applicable Statute of Limitations. We must respectfully decline to extend any UIM offers to Mrs. Tuoni, since her claim is no longer viable based on our review of the file.

If you have any questions or additional information for our consideration, please feel free to contact me.

Sincerely,

*Anniece Washington*

Anniece Washington
Metropolitan Direct Property and Casualty Insurance Company
Senior Claim Adjuster
(800) 854-6011 Ext. 5563
Fax: (866) 947-1917

New Mexico state law requires us to notify you of the following: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilt of a crime and may be subject to civil fines and criminal penalties.

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its Affiliates, Warwick, RI

MPL NOUIMEXP

Printed in U.S.A 0698

EXHIBIT 17

EXHIBIT A

160826200070111

# JOHN TIWALD, P.C.

Law Firm

*John Tiwald*
*Attorney at Law*

July 18, 2016
Via Express Mail No. 037377651

Anniece Washington
Met Life Insurance Co.
P.O. Box 410350
Charlotte, North Carolina 28241-0350

Re: My Client/Your Customer: Francesca Tuoni
Your Claim No. DAB41867 DU
DOL: 9/13/2005

Dear Ms. Washington:

This letter is written to make a settlement demand in this underinsured motorist case.

**Collision**

The collision in this case occurred on September 13, 2005 as your insured Francesca Tuoni was on her way to work at Albuquerque High School where she was a Latin and English-as-a-Second Language teacher. Francesca was driving north on Girard. She was preparing to turn west on Lomas at the intersection and had the green arrow to do so. At-fault driver Melody Ripley, traveling east on Lomas at the intersection with Girard, ran her red light, (traveling 40 mph), and T-boned the driver's side of Francesca's 1989 Volvo sedan at a high rate of speed. The collision occurred just behind the driver's door. Ripley told the investigating officer that she had a green light when she drove into Francesca's car. Witnesses who were also traveling east on Lomas and traveling behind Francesca on Girard said that Melody ran a red light and confirmed that Francesca was making a turn on the green arrow. Not only did Ripley run the red light, she then lied about it to the police officer.

An ambulance came to the scene of the crash and examined Francesca. She experienced headache, neck and back pain immediately afterwards. Francesca had a lapse in consciousness at the time of the crash and doesn't remember anything until people helped her out of her car. Francesca's car had spun to the east from the impact. The collision occurred right in front of Jefferson Middle School. Children who know Francesca saw the collision and came out to help her. Francesca was both concerned about not upsetting the children and not wanting to be late to school. She turned down the EMT's recommendation that she go to the ER. She instead called her daughter to take her in to work.

Francesca experienced a severe hyperflexion injury to her neck as evidenced by the fact that a smudge of red lipstick was found on the front left breast of her white shirt. The lipstick stain was a result of her head and neck snapping down severely in the crash.

**Telephone 505 / 883-4133**
Fax 505/883-0724
E-Mail: john@tiwaldlaw.com

Suite 210
6121 Indian School Road NE
Albuquerque, New Mexico 87110-3179

160826200070111

Photographs of Francesca's car, are included in this package, including also a photo of the at-fault-driver's car. The impact was severe.

**Background**

Before the collision of September 13, 2005, Francesca was 60 years old and in very good health. She had no prior injuries of any significance, no arthritis and no history of headaches. She could, at any time, jog around the golf course near her home. She walked 3 to 5 miles every day and frequently hiked to the top of the Sandia Mountains from the foothills of these mountains. Shortly after the collision Francesca tried to go for a walk but had to turn back because of head, neck and back pain.

Francesca was born and raised in Albuquerque New Mexico, the daughter of Italian immigrants. Her parents valued education very highly and raised their children to have a strong work ethic. The parents, fluent in 3 languages, taught their daughters to speak 3 languages, English, Italian and Spanish. Francesca relied upon her knowledge of language to acquire marketable skills when her husband left her and her 3 young children in the early 1990's. She completed a Master's degree in English as a Second Language and Latin and began a career as a high school teacher at Albuquerque High School.

It was always Francesca's dream to teach at a college level. So, despite having a full time job, she began graduate school to complete a PhD program at the University of New Mexico in English. This was a slow process but by September 13, 2005 Francesca had completed all course work for her PhD. She was preparing to take her oral exams before starting to write her dissertation. The collision brought a halt to that preparation and made daily life very difficult. Her life became a struggle to cope with debilitating physical pain and discomfort, difficulty functioning mentally and emotionally, meeting the requirements of her teaching job, while keeping alive her educational goals.

The injuries Francesca suffered are described in detail in the Medical Summary chart below. They have been life changing. Chiropractor Francesca Russo suggested that Francesca see Dr. Rosa and Dr. Harshfield MD in New York concerning her ongoing neck pain and cervical pressure. Francesca had not been helped by any testing or treatment prior, so agreed to go to New York for testing and consultation on January 14, 2011. Drs. Harshfield and Rosa, using the combination of Cine MRI, (a special MRI study used to observe cerebrospinal fluid flow through the foramen magnum) and Dynamic Upright MRI, (which records ligament/membranous structures of the cervical spine through neutral or still views, flexion, extension, axial views and views of the cranio-cervical junction), studied the location of Francesca's pressure and pain.

**Chiari Malformation**

Dr. Harshfield's report indicates, among other findings, "encroachment by the cerebellar tonsils on the foramen magnum without high grade Chiari Malformation." At the end of his report he states: "The cerebellar tonsillar ectopia is producing interference with normal CSF [cerebral spinal fluid] migration through the foramen magnum related to cardiac activity and respiratory variation." His findings indicate a low-grade Chiari Malformation, which would be a Chiari-1 malformation.

160826200070111

The Chiari-1 Malformation was asymptomatic and not known to Francesca prior to the crash. However, the severe crash made it symptomatic, permanently so, and I here explain this condition. The key in her condition is that the cerebellar tonsils interfere with the flow of cerebral spinal fluid, causing back-up of the fluid with resulting pressure and pain in the head.

Chiari-1 malformation causes the rounded lobules on the undersurfaces of the cerebellum, called the cerebellar tonsils, to become herniated or to be moved or pressed away from their usual position inside of the skull downward through the large opening in the base of the skull (foramen magnum) into the spinal canal. The herniated tissue (cerebellar tonsils) then block or interfere with the circulation of cerebrospinal fluid (CSF) around the brain. You can see that diagramed in the image on the right, above.

Chiari 1 is generally considered to be congenital, although acquired cases from trauma do occur. Congenital Chiari Malformation may be completely asymptomatic and only become symptomatic after a traumatic brain or spinal cord injury. The action of a whiplash, coup-contra-coup injury such as Francesca Tuoni suffered in the rear-end collision, or a direct blow to the head, can cause Chiari to develop or become symptomatic in a person who did not have it previously. Certain types of trauma cause or accentuate cerebellar tonsillar impaction in the foramen magnum or result in destabilization of a marginally compensated cerebrospinal fluid system.

The most recent scientific evidence indicates that Chiari 1 Malformation occurs in individuals who have an underdeveloped posterior cranial fossa and are therefore susceptible to hindbrain overcrowding and herniation. A severe whiplash or blow to the head can cause the herniation to occur with the resultant cerebrospinal fluid disturbances which are responsible for direct compression of nervous tissue.

160826200070111

Victims of Chiari Malformation experience severe headaches, neck pain and chronic pressure in the neck and head. The pressure is from the restricted CSF flow. That is what Ms. Tuoni still suffers, none of which did she have prior to the collision. I am not saying the crash caused the Chiari-1 Malformation; instead, the crash made the prior life-long asymptomatic condition symptomatic — and it will remain symptomatic for the remainder of Ms. Tuoni's life.

Chiari Malformation can only be treated surgically. Some of the best known neurosurgeons who treat Chiari are in New York. Francesca is a good surgical candidate for treatment, but the surgery is very expensive and yields mixed results. Relief of pressure is the desired outcome, although long term pain sometimes replaces the pressure.

**Concussion, Brain injury**

To this day Francesca still suffers from the post-concussion symptoms that she suffered from the crash. Short term memory impairment is now a chronic condition. Cognitive deficits are significant for a person who was on the verge of obtaining her PhD in English at the time of the crash. The neuropsych report of Dr. Betsy Williams describes what a permanent brain injury is like for someone of such high pre-injury mental skills. She mis-reads words and switches numbers; is often disoriented; when reading, letters move from one line to the next, and she has trouble with word recall; reading comprehension difficulty, along with disorganization, and concentration difficulty. Exhaustion was an early symptom which has receded over the years to the present.

**Cervical Spine Injury**

Enduring symptoms are muscle weakness, numbness in her fingertips, sharp pain and tingling in her arms, occipital headache and neck pain. She can sleep only on her right side.

Included here are images from the MRI studies performed by Dr. Harshfield in New York. The comments on each image were made by the Doctor as he reviewed the images with Francesca.

**Medical Summary**

| Medical Provider<br>And Address<br>Francesca Tuoni, DOI: 09/13/2005 | Year of Treatment | Reason for Treatment |
|---|---|---|
| David Kilgore, MD<br>Elizabeth Bretton, MD<br>Rio Grande Family Medicine<br>801 Encino Pl. NE, Suite A6<br>Albuquerque, New Mexico 87102 | 09/13/05 | Francesca sees her PCP after school that day feeling disoriented and having increased neck, shoulder, chest and back pain. She is referred to the Pain Clinic.<br>Total Bill: $65.00 |
| | 09/28/05 | A Follow-up visit with Dr. Kilgore concerning the collision. |

EXHIBIT B

160826200070111

| | | |
|---|---|---|
| | | Francesca has continued and worsening chest pain.<br>Total Bill: $65.00 |
| Presbyterian Hospital Radiology<br>1100 Central SE<br>Albuquerque, New Mexico | 09/28/05 | Chest X Rays are taken which are negative.<br>Total Bill: $224.00 |
| The Pain Clinic, LLC<br>B.L. Brown, AA, LMT<br>2800 San Mateo Blvd. NE, Suite 101<br>Albuquerque, New Mexico 87110 | 10/18/05<br><br><br><br><br>11/10/05 | Francesca sees B.L. Brown for a first session of Integrated Neuromuscular Therapy, (as prescribed by Dr. Bretton). Francesca has wide spread pain from the 40 plus mph collision which hit her driver's side. Her head whipped to the left breast. Neck was sore immediately, bruises on left hip and pain in sternum. Pt. having difficulty driving-can't turn. Sharp pain down rt. leg. Pain in low back, pressure in back of head. short term memory loss, panic when driving, difficulty speaking and holding thoughts and finding words, turning head hurts and chest, tired. Pt. is very fit, hikes. Pt. went for a walk and couldn't, because she hurt everywhere. Francesca is prescribed home exercises as well.<br><br>A 2nd visit with Brown. Pain is in neck, shoulders, headaches, waist, pelvis where she had seat belt & hit steering wheel. Has pressure in neck, head and is dizzy. |
| David Kilgore MD, (cont.) | 11/14/05 | A follow-up for MVA. Neck pain and anxiety. Will continue with Pain Clinic. Recommends therapist and possible medication as adjunct.<br><br>Total Bill: $65.00 |

160826200070111

| | | |
|---|---|---|
| The Pain Clinic, (cont.) | 11/23/05 | Continued neck soreness w/pressure moving up into head. |
| | 11/25/05 | Some improvement in neck pressure, not as stiff, most noticeable when lying down and has more pressure and stiffness then. |
| | 12/06/05 | Continuing tightness and soreness. |
| | 12/14/05 | Neck pressure at base of skull/stiff shoulder, stiff mid back and low back and hips |
| | 12/20/05 | Pain and stiffness in neck and back. |
| | 12/28/05 | Francesca feels unsteady, almost dizzy, neck stiff with feeling of pressure |
| | 01/03/05 | Pain and stiffness in neck referred to forehead |
| | 01/06/06 | Neck still feels compressed and sore. |
| | 01/09/06 | Neck is tight w/occasional shooting pain. Back has a crawling sensation. Shoulder tight. |
| | 01/23/06 | Francesca took a short walk yesterday and awoke the next morning with pain, stiffness and tightness in low back & hips, neck and left shoulder. |
| | 01/27/06 | Neck stiff and sore, shoulder tight and sore, aching, low back pain |
| | 02/08/06 | Same, plus neck pressure |
| | 02/13/06 | Same, plus occasional dizziness. |
| | 02/16/06 | Pt. doing very well w/stretches. |

EXHIBIT B

160826200070111

| | | |
|---|---|---|
| | | Pt. improving as expected. Some pain in neck and hips. |
| | 02/21/06 | Neck pressure, sore, tight, shoulders very tight. |
| | 02/27/06 | Neck and shoulders very tight/ has a crawling feeling. Low back spasms. |
| | 03/01/06 | Tight pulling feeling in neck on rotation, low back hip soreness. |
| | 03/06/06 | Neck worse in am. Francesca feels pressure in the center under skull in back of head. Pain in shoulder when rotated, shooting pain in SI. |
| | 03/08/06 | Neck pain & tightness. Low back pain decreased |
| | 03/14/06 | Neck pressure at base of skull. |
| | 03/17/06 | Pt. feeling great today. |
| | 03/20/06 | Morning after last treatment pressure increased in neck and has not let up and some dizziness. Tightness in shoulders, pain in spine and hips. |
| David Kilgore MD, Elizabeth Bretton, MD (cont.) | 03/21/06 | Follow-up for MVA. Still has pressure in upper neck. Still going to Pain Clinic. History of LBP in past but has bilateral LBP since MVA. Pain in LB worse from walking. Has Sub Occipital and Occipital tenderness. Refer to Dr. Russo for evaluation and treatment.<br><br>Total Bill; $65.00 |

160826200070111

| | | |
|---|---|---|
| The Pain Clinic, (cont.) | 03/29/06 | Neck pain down into shoulders, painful on rotation/ pressure at base of skull. Low back tight and sore. |
| | 04/06/06 | Neck pressure & discomfort, shoulders and low back pain/tightness |
| | 04/11/06 | Neck and under skull pressure and heaviness with occasional crawling sensation in neck moves into shoulders, low back and hips. |
| Atlas Orthogonal Chiropractic of Albuquerque, LLC<br>Francesca Russo, DC<br>2730 San Pedro NE, Suite A<br>Albuquerque, New Mexico 87110 | 04/03/06<br>04/10/06<br>04/12/06 | Francesca sees Francesca Russo for evaluation and plan of treatment during three initial visits. Symptoms are described as having never occurred before and as extreme exhaustion, memory loss, debilitating discomfort, Pressure at base of skull, moderate to severe and constant, in back of head. Also, light headedness, memory loss and loss of balance. Neck pain left and right moderate to severe and increased by forward, backward, rotation and bending of neck. Sensation of grinding, grating sounds. Sensation of skin crawling, nausea. Pain in both arms, mid back, low back hips. Pain in hips and pelvic area and right leg. Pain is getting worse and is sharp, and she has not had previous injuries to the injured areas. On 04/12 a Vertebro-basilar Artery Functional Maneuvers test requiring Francesca to rotate her neck with hyperextension for 20 seconds produces dizziness with diminished and blurred vision.<br><br>Total Bill: $421.00 |

160826200070111

| | | |
|---|---|---|
| James A. Mertz, DC<br>Radiologist<br>7123 Prospect Pl. NE<br>Albuquerque, New Mexico 87110 | 04/12/06<br>04/27/06<br>05/19/06 | Francesca is referred to Dr. Mertz by Dr. Russo for X Rays of the cervical spine and lumbar spine. Symptoms include neck pain, Occipital headaches, Parasthesia across Trapezius, bilaterally. |
| Francesca Russo, (cont.) | 04/12/06 to 11/08/06 for a total of 16 treatments | Chiropractic treatment including a letter of evaluation written to Francesca's PCP, Elizabeth Bretton of 04/20/06, a progress report to Dr. Bretton of 05/19/06 in which Dr. Russo expresses concern that Francesca is not responding to treatment. Russo is considering a CT scan of her head to assess any brain injury as her trauma was quite severe with her head flexing so far as to imprint lipstick over her left breast area. She also recommends pain management treatment for her pain and overall fatigue since the collision. A last letter to Dr. Bretton recommends referring Francesca to Ernesto Garza, MD, a Physiatrist for evaluation and treatment. A narrative written by Dr. Russo of 11/08/06 states that Francesca is being seen for monthly follow-up. She continues to have same symptoms with intermittent exacerbations. Dr. Russo will continue to provide care on a palliative/supportive basis and Francesca is planning to see several specialists including an orthopedist and a brain specialist.<br><br>Total Bill: $755.69 |

160826200070111

| | | |
|---|---|---|
| The Pain Clinic, (cont.) | 04/18/06<br><br>04/21/06<br><br>05/01/06 | Neck pressure and tightness increases with arm usage.<br><br>Neck pressure and tightness<br><br>Pressure in head continues, sub occipital, bilaterally to head.<br><br>Total Bill: $4,213.49 |
| Ernesto Garza, MD<br>7920 Carmel NE<br>Albuquerque, New Mexico 87122 | 06/07/06 | Francesca sees Physiatrist Ernesto Garza MD for a consultation concerning ongoing symptoms of wide spread pain, spasms and pressure in the cervical spine and sub occipital region of the brain beginning 09/13/05/. Notes reflect the on going TBI symptoms of exhaustion, head ache, memory loss and loss of balance. Dr. Garza's notes include Francesca's goal for therapy as being a desire for, "Restoration of Normalcy". Dr. Garza also notes in the history that Francesca has had a very productive life. Dr. Garza prescribes an MRI of the cervical neck w/extension/flexion.<br>No Bill Available |
| Upright MRI of New Mexico<br>7600 Jefferson NE, Suite 26<br>Albuquerque, New Mexico 87109 | 06/20/06 | An MRI of the cervical spine reveals the following:<br>1. Straightening of cervical spine suggestive of underlying muscular spasm.<br>2. intervertebral disk space narrowing at C5-6 and C6-7.<br>3. moderate to severe disk bulging at C5-6 which is pronounced in extension.<br>4. Left-sided neural encroachment at C5-6 and C6-7.<br><br>Total Bill: $2081.63 |

160826200070111

| | | |
|---|---|---|
| Ernesto Garza, MD, (cont.) | 07/03/06 | A return visit with Dr. Garza He recommends Neuropsychological testing to Francesca for mild TBI. No Bill Available |
| Southwest Medical Associates<br>Daniel Shibuya, MD<br>6100 Pan American Freeway, NE, Suite 100<br>Albuquerque, New Mexico 87109 | 09/11/06 | A Neurological Consultation with Daniel Shibuya referred by Dr. Russo for posttraumatic syndrome resulting from the collision of 09/13/06/. Francesca does not know whether she lost consciousness. The force of the accident was such that her car came to rest facing a different direction. She does not know whether her car spun around before coming to a rest. She doesn't know whether she lost consciousness. Francesca did go to work that day. By the next day Her chest began hurting. A few days later she began noticing a "tremendous" pressure in her head at the base of the skull and a feeling like her head wasn't attached to her spine. She reports difficulty in moving forward freely, additionally, has weakness, which causes her to drop things. She has random sharp pains in her legs and arms. When she feels the pressure building up in the neck and head it brings on nausea. She has been undergoing adjustments by Dr. Russo and after each one she feels better for a few days before the pain becomes worse again. Neck examination demonstrates mild diminished range of motion with neck flexion, and restricted range of motion with chin to shoulder, bilaterally, with restriction more to the right. There is also moderate diminished range of motion |

160826200070111

| | | |
|---|---|---|
| | | with ear to shoulder, bilaterally, to an equal degree. Dr. Shibuya reviewed the cervical spine MRI as notable for disk bulging at C5-6 and C6-7 levels as moderate to severe. The abnormality was most pronounced during extension. His impressions are that the symptoms are likely musculoskeletal, maybe apraxia with gait, maybe myelopathy. He recommends an MRI of the brain because of the long standing nature of the symptoms as well as memory and concentration difficulties and language dysfunction.<br><br>Total Bill: $272.00 |
| Albuquerque Imaging Center<br>700 Lomas NE<br>Albuquerque, New Mexico 87102 | 09/26/06 | MRI of the brain reveals no evidence of significant acute intracranial process. There are a few foci of T2 signal alteration.<br><br>Total bill: $1180.00 |
| Daniel Shibuya, MD, (cont.) | 10/09/06 | A Follow-up visit at which Francesca reports that her symptoms are about the same. The MRI of the brain is normal. His impression is that she has Posttraumatic syndrome and possibly some empiric muscle relaxant might help lessen the pressure in her head.<br><br>Total Bill: $329.00 |
| Clifford R. Stoller, MD<br>6100 Seagull Lane NE<br>Suite 106<br>Albuquerque, New Mexico 87109 | 10/31/06 | Francesca sees Physiatrist, Clifford Stoller MD for her injuries. She describes symptoms of weakness in hands, difficulty gripping, numbness and tingling in fingers and toes, chronic neck pain, cracking and grinding in her neck, pressure through her |

160826200070111

| | | |
|---|---|---|
| | | neck and at base of her skull, loss of range of motion in her neck. She describes cognitive problems such as "buzzing", exhaustion, feeling off balance, and has memory lapses. She describes other problems such as counter pressure when walking fast and waves of heat, and earaches. She had no problems prior to this accident of 9/13/05. She states that she had been in good health. The physical examination reveals restricted motion in rotation to only 50 degrees. Spurling's maneuvers causes numbness going down both arms. She lacks 15 degrees of flexion with full extension, right, and lateral bending to 15 degrees. Tenderness over C2-3 facets and over the bilateral upper trapezius musculature over soft tissue/bony palpation. Stoller's assessment is: Cervical Strain/ Sprain, chronic in nature, multi-fatorial in origin of the bilateral upper trapezius musculature with C2-3 facet mediated pain. He recommends a neurosurgical consult due to the fact that disc bulges are significant at C5-6, C6-7 and are causing approximation with the ventral spinal cord.<br><br>Total Bill: $304.23 |
| Presbyterian Magnetic Resonance Imaging Center<br>1011 Coal SE<br>Albuquerque, New Mexico 87106 | 0215/07 | John Sloan prescribed an MRI of the Lumbar spine for Francesca's symptoms of pain and pressure in neck and lower torso with numbness and tingling of the toes. The results reveal diffuse, degenerative, disco vertebral and facet changes with mild spinal stenosis at L3-4 and L4-5 |

160826200070111

| | | |
|---|---|---|
| | | secondary to combination of Malalignment, at L3-4 and degenerative facet changes, moderate at L4-5, bilaterally, moderately severe right degenerative facet change at L5-S1.<br><br>Total Bill: $1200.00 |
| Manzano Medical Group<br>John Henry Sloan, MD<br>Benson Daitz, MD<br>505 Elm St. NE<br>Albuquerque, New Mexico 87102 | 01/22/07<br><br>02/14/07 | Francesca sees Dr. Sloan for an initial evaluation of chronic pain, pressure, numbness and tingling in various parts of her body since 09/13/05 following a MVA. Pain is in the back of her neck, lower back, thighs, calves and feet She has some arm pain as well. Hot packs, massage without relief. Some benefit from Dr. Russo. Dizziness, changes in taste, bladder control, attacks of weakness, night sweats, numbness and tingling in the feet and hands. MRI ordered. Physical Therapy ordered.<br>Total Bill: $220.00<br><br>Francesca is referred to Physical Medicine and Rehabilitation Specialist, Ben Daitz by, Physiatrist John Sloan, MD for an evaluation of Francesca and what is described as Myofascial Pain Syndrome. Some initial records were either never preserved or no narratives were written from the initial visits with Dr. Daitz and Dr. Sloan. The first narrative is dated February 14, 2007 describing the initial visit with Dr. Daitz of 01/22/07. She does not remember whether she lost consciousness at time if MVA. She has had a range of problems since. Principally complains of a sensation of pressure in her |

160826200070111

| | | |
|---|---|---|
| | | head and neck, sometimes accompanied by dizziness and nausea, some difficulty with taste. She sometimes writes words on the board that are unintelligible for her and her students to read. Prior to this collision she had always been extremely healthy and regularly engaged in physical activity as an avid hiker and mountain climber, and she has had no prior medical or surgical diseases. On examination and palpation of the left sternocleidomastoid, both clavicular and sternal division have significant trigger points; also trigger points palpated in posterior cervical and occipital muscles. He recommends trigger point injections and administers 2. Daitz believes Francesca has suffered MTBI and has, "Possible Post Concussive symptoms and Myofacial Pain Syndrome following a motor vehicle accident."<br>Total Bill: $140.00, $120.00 |
| | 02/28/07 | A follow-up with Dr. Daitz. The trigger point injections did not help and may have exacerbated her symptoms. He now thinks Francesca's symptoms best represent a mild to moderate Traumatic Brain Injury more than anything else. She had a severe flexion/extension injury as a result of this collision and actually had a lipstick imprint on her blouse where her face met her chest. Her symptoms are suggestive of Autonomic Dysfunction even though she doesn't remember loss of consciousness. He suggests low dose Beta Blocker to see if her |

| | | |
|---|---|---|
| | | symptoms of dizziness and pressure might be ameliorated. Impression is Possible Mild Traumatic Brain Injury secondary to MVA.<br>Total Bill: $120.00 |
| | 03/14/07 | A return visit with Dr. Daitz with no dictation available.<br>Total Bill: $120.00 |
| | 03/28/07 | A return visit with Dr. Daitz. His notes describe a constellation of symptoms suffered by Francesca since the collision of 9/05. These include tingling in both or her arms particularly when her head is in an extended position and intermittent episodes of dizziness and pressure. The prescription of a beta blocker has helped some. Daitz is going to find an appropriate Neuropsychologist to see for an evaluation.<br>Total Bill: $120.00 |
| | 07/16/07 | A final visit with Daitz described as High Complexity and for which there is no dictation.<br>Total Bill: $180.00 |
| Neuropsychology Associates, P.C.<br>Ronald A. Yeo, PhD.<br>San Pedro Office Park<br>2201 San Pedro Dr. NE<br>Building 1, Suite 215<br>Albuquerque, New Mexico 87110 | Evaluatio n 07/25/07 Report from Dr. Yeo 01/17/08 | Francesca is referred for Neuropsychological testing by Dr. Daitz and Dr. Sloan. The evaluation is done on 07/25/07. She describes the day of the collision as that she felt stiff and felt that she was rather "slow". Over the next few days she began thinking "I really have a problem". She started holding her head quite frequently due to strange sensations there. She wrote sentences on the board that ended in gibberish. Other similar incidents occurred. Currently, she has pressure and |

160826200070111



| | | |
|---|---|---|
| | | a whooshing sound and sometimes a high pitched whine in her left ear. She also has tingling, numbness, poor balance, pain, nausea and fatigue. Her cognitive functioning and memory are still good. There is no prior history of head injury. During the interview she is pleasant and cooperative and puts forth her best effort. Overall Intellectual functioning is in the superior range. Nonverbal reasoning is in the average range. There is no significant dysfunction in attention and concentration. A variety of memory tests score slightly below average. On selected nonverbal memory tests there is some difficulty. The overall results do not, now, demonstrate the sort of neuropsychological deficits that would be expected with a closed head injury. Yeo suggests Francesca may have an Endocrine disorder as there is no evidence of malingering. Total Bill: $2,030.60 |
| New Mexico Neurology Associates, PC<br>Mark Berger, MD<br>4273 Montgomery NE, Suite 110<br>Albuquerque, New Mexico 87109 | 08/04/08 | Francesca sees Dr. Mark Berger for a consultation. His notes describe the fact that Francesca continues to have pain in her neck which has spread into her left ear since the collision of Sept. 13, 2005 as well as intermittent pressure and pain in her head and neck. It spreads from the back of her head to the top. She still feels as though her throat is constricted and has a catch in her throat and pain in her throat. She has intermittent flashes of an unpleasant odor and tingling and numbness involving various aspects of her arms and legs as well as numbness at times on the |

160826200070111

| | | |
|---|---|---|
| | | tongue and the left side of the face, intermittent flashes of heat, panic, buzzing in her head, ringing in left ear and extreme exhaustion. On examination, there is some limitation of movement in all directions with pain. Plan is for EEG, EMG, Brainstem evoked responses.<br>Total Bill: $308.00 |
| | 09/29/08 | All tests are normal. Berger states that the chronic nature of headaches suggest a poor prognosis.<br>Total Bill: $1,490.00 |
| Francesca Russo, DC, (cont.) | 10/15/08 | Francesca returns to Dr. Russo for continuing symptoms. Pain is described as currently 7-10. She is referred to Terry Kern, PT For therapy<br>Total Bill: $35.00 |
| Terry Kern, Physical Therapy<br>5971 Jefferson NE, Suite 102<br>Albuquerque, New Mexico 87109 | 12/09/08<br>12/23/08<br>to:<br>10/13/10 | Initial Physical Therapy Evaluation by Kern as prescribed by Francesca Russo for management of cervical and lumbar spine symptoms. The evaluation notes describe skeletal instability and neuromuscular compensation appearing to be due to alteration of vestibular sensory input and reflexes affecting the golgi tendonorgans and muscle spindles of the middle scalene and quadratus lumborum. Also tightness of the dura for her central nervous system.He gives Francesca home exercises to do in addition to PT.<br>Francesca is treated by Terry Kern until 10/13/10. The final notes describe continuing scapular and lower leg instability causing compensation with her posture and movements and involving her bilateral anterior and lateral fascial vectors. |

| | | |
|---|---|---|
| | | Total to 11/30/09: $1,579.00<br>Total to 10/13/10: $947.00 |
| Francesca Russo DC, (cont.) | 07/27/09 | A follow-up visit with Dr. Russo concerning Francesca's unimproved symptoms. The pressure in her neck is more intense and she has frequent headaches varying from 0-9 and related to movement.<br>Total Bill: $50.00 |
| Francesca Russo, (cont.) | 08/03/09 | Overall, Francesca feels improved.<br>Total Bill: $50.00 |
| | 10/14/09 | Russo is seeing Francesca to provide support and palliative care for chronic problems. Needs new referral for Terry Kern. |
| | 12/09/09 | Intense neck pressure and pain moving through to top of head when right leg is crossed over left. |
| | 01/13/10 | Significant pain from right hip down to right knee and through Pain is from 5-9 in lower back. |
| | 03/23/10 | Support for chronic condition. |
| | 04/20/10 | Weakness, pain. Dropping things. Will make an appt. with Terry Kern. Francesca has same symptoms. |
| Albuquerque Ambulance Service<br>4500 Montbel Pl. NE<br>Albuquerque, New Mexico 87107 | 11/21/10 | Francesca rides back from Santa Fe to Albuquerque after attending a conference on11/21/10 in the back of a van with a group of people. The van in which she is riding has a very rough ride and Francesca is bouncing up and down. The chronic pressure in her upper |

160826200070111

| | | |
|---|---|---|
| | | cervical spine starts increasing. After coming back to Albuquerque the group gathers at a friends house for dessert. The increased pressure causes dizziness and nausea. Francesca suddenly vomits at the table and became unresponsive with her eyes open widely. Witnesses observe that Francesca has no bodily movements. She has a blank stare on her face with no response to efforts to stimulate her. One of Francesca's sons is there and he starts crying, fearing that she is dead. She is incontinent of urine. Francesca regains consciousness after 2-3 minutes and has a postictal period after regaining consciousness, (weakness, nausea, dizziness). After which, she is AOx4. Patient has a history of severe whiplash 5 years prior with chronic neck pain. She has had episodes of dizziness in the past but not this severe. Francesca is transported by ambulance to Presbyterian Hospital.<br><br>Total Bill: $514.00 |
| Presbyterian Hospital<br>1100 Central Ave. SE<br>Albuquerque, New Mexico 87106 | 11/21/10 | Francesca is taken to Presbyterian Hospital ER following the Seizure. Prior to the seizure Francesca experienced pressure, headache, vertigo, nausea. She has had similar experiences before, in fact, the week before, while teaching, just not as severe. MVA 5 years before with extreme whiplash. EKG is negative. Lab tests are normal. Diagnosis is Fainting with a Vagal Reaction.<br><br>Total Bill: $2990.00 |

**EXHIBIT B**

160826200070111

| | | |
|---|---|---|
| Scott L. Rosa, D.C.<br>230 Rock Hill Dr.<br>Rock Hill, New York 12775<br><br>David Harshfield, MD<br>Comprehensive MRI of New York, PC<br>4 Johnson Road<br>Latham, New York 12110 | 01/14/11 | On recommendation of Dr. Russo, Francesca sees Dr. Scott Rosa for a consultation concerning her chronic neck pain and pressure she has had since 09/13/05. Dr. Rosa works in partnership with Radiologist, David Harshfield, MD in New York. They use a Dynamic Upright MRI which records the ligament/membranous structures of the Cervical Spine, through neutral or still views, flexion, extension, axial views, and Proton Density coronal and axial spot sequences at the cranio-cervical junction, (the location of Francesca's ongoing pressure and pain). They obtain a cine MRI initially to see if any clinically significant instability is present to explain the ongoing chronic, recurrent pain in various areas of Francesca's neck. The imaging study demonstrates key areas that are damaged and clinically correlate to the areas of ongoing pain and discomfort she continues to experience. See Dr. Harshfield's report. One axial image at the cranio-cervical junction demonstrates low lying cerebellar tonsils bilaterally, and are a neuro-radiographic finding in patients involved in motor vehicle crashes. The imaging demonstrates significant soft tissue damage at the cranio cervical junction, as well as a catastrophic failure of the anterior and posterior elements most notable at C4-5. This finding is significant as it demonstrates shearing and compressive forces which are consistent with an acceleration/deceleration injury. |

16082620007011 1

| | | |
|---|---|---|
| | | Multiple disc protrusions are noted at C4-5, C5-6 and C6-7 in extension stress, further compressing the spinal cord. There is disruption of the ligamentum flavum at C4-5. Francesca continues to experience ongoing chronic symptoms consistent with suffering from the late effects of "whiplash and its associated disorders", (WAD). She should have an orthopaedic work-up as she is a surgical candidate as demonstrated by her significant instability noted at C4-5 which can be clearly seen in her Cine MRI study. She might benefit from pain intervention including a facet block and/or radiofrequency neurotomy. Dr. Rosa states that within a reasonable degree of medical certainty, the damages to soft tissue structures are causally related to the motor vehicle crash of 09/13/2005. The timing of the event, crash history, and subsequent onset of symptoms, post motor vehicle crash, leave no other plausible explanation for the findings in this report. Total Bill: $2,500.00<br><br>Some highlights from Dr. Harshfield's extensive radiology report describes the following findings:<br>1. Loss of normal cervical Lordosis.<br>2. Multilevel Spondyloathropathy involving mid and lower cervical disc levels<br>3. C0-C1, Encroachment by the Cerebellar tonsils on the Foramen Magnum associated with capsulosynovial thickening of the atlanto-odontoid |

160826200070111

| | | |
|---|---|---|
| | | articulation. The combination of findings can potentially interfere with normal CSF migratrion through the Foramen Magnum, thereby precipitating headaches and other neurological symptoms.<br>4. Loss of the normal longitudinal collagenous architecture of the anterior dura mater/tectorial membrane. Involvement of greater than two thirds of the width of the tectorial membrane is consistent with a high grade, (class III) lesion.<br>At C4-5, C5-6 and C6-7 there is disk herniation and clinically significant encroachment upon the nerves, at each site, producing significant problems.<br>Finally:<br>Loss of the normal anatomic relationship of C1 and C2 consistent with atlantoaxial rotatory instability/insufficiency.<br>Encroachment by the cerebellar tonsils on the Foramen Magnum without high-grade Chiari Malformation.<br>The Cine CSF flow study reveals that the Cerebellar Tonsillar Ectopia is producing interference with normal CSF migration through the Foramen Magnum related to cardiac activity and respiratory variation.<br>Total Bill: $2050.00. Francesca had been quoted $1500.00 for the study. The charges were adjusted, to $1,750.00. |

160826200070111

| | | |
|---|---|---|
| Betsy L. Williams, PhD, ABN, FACPN<br>Neurobehaviorist<br>5400 Phoenix NE, Suite 107<br>Albuquerque, New Mexico 87110 | 03/21/12 | Referred to Dr. Williams by her attorney, John Tiwald to assess possible effects of injuries from a motor vehicle accident of 09/13/05. Since that event her many problems have included having trouble understanding words, (for example she read the word nuns as minus and couldn't understand the meaning of it. Letters seem to move from one line to the next, she has trouble with word recall, she overshoots when reaching for things and missed her mouth with a fork while eating, becomes angry when she tries to study because of misreading and switching numbers, etc. gets disoriented in the car, has trouble with reading comprehension. She is particularly frustrated since the accident occurred just before she was to begin studying for her PhD comprehensive exams. She feels she has lost a great deal of information & will have to start over to complete the final processes for her doctorate. She must now be enrolled & do research every semester to keep her degree potential open but becomes frustrated because she cannot remember what she has read or written from one semester to the next. She also reports multiple physical symptoms including but not limited to, muscle pain and weakness, heaviness in her legs, chronic pain when getting out of bed, random clusters of pin-prick sensations, occasional numbness in her face, dizziness and nausea, elevated gag reflex, compromised neck movement, pain in the neck and head, pressure in the head and neck |

160826200070111

| | | |
|---|---|---|
| | | and waves of heat and perspiration. Ms. Tuoni says that as a result of the severity of her injuries sustained in the motor vehicle accident of 9/13/05 she has been diagnosed with herniation of the Cerebellar Tonsils into the Foramen Magnum. Essentially, part of her brain tissue has been extruded into the spinal canal. After being given an extensive battery of tests, Dr. Williams makes the following observations and findings: Francesca is quick to comprehend instructions and approaches tasks as though accustomed to being successful. She will lose track of what she is thinking at times and becomes confused at times over very simple things. Ms. Tuoni is exceptionally bright who manages to score well on many areas despite cognitive impairment. There are notable deficits in the areas of memory and motor speed bilaterally. Her right hand is not much stronger than the left. The most profound finding is her loss of intellectual flexibility and fluidity. Evidence is that she has lost at least 33 IQ points from prior levels. She has significant deficits in nonverbal IQ. While retaining a level of global intellectual functioning that is markedly higher in some ways than the average population, there are a number of factors that suggest she may have difficulty in sustained performance of mental tasks within the scope of individuals at her current IQ level. This imposes significant limitations on her future potential to meet some of her longstanding goals, especially educationally. She is |

160826200070111

| | | |
|---|---|---|
| | | approaching the completion of her PhD. It is not likely that she will ever bring that goal to fruition given her loss of IQ points and memory deficit. The Behavior Inventory is designed to obtain information about Ms. Tuoni's behavioral status before and after the injury. The Behavior Inventory is administered to both Francesca and her son, Lucien. The results are that she has become more afraid, anxious, confused, distractible, easily upset, forgetful, slow, tense, tired, worrisome and less optimistic. A second test, Multiple Affective Adjective Checklists given both to Francesca and to her son, Lucien showed similar increases in anxiety and depression. Other results indicate a moderate to severe level of anxiety and difficulties in the areas of working memory and task monitoring. The Validity Indicator Profile reveals that Francesca's responses are valid and her response style are compliant. Her performance curve for both the Nonverbal and Verbal subtests indicate that she intends to do well and that she applies sustained effort. Dr. William's DSM-IV Diagnosis is: 294.9 Cognitive Disorder NOS reasonably attributable to the motor vehicle accident on 9/13/05.<br>Total Bill: $3,424.00 |
| Stephen P. Weiss, MD<br>3901 Georgia St. NE<br>Albuquerque, New Mexico 87110 | 06/30/15<br>07/23/15<br>11/12/15<br>01/20/16 | Francesca has a consultation and 3 follow-up visits with Stephen Weiss, MD concerning her ongoing symptoms which have never resolved since the MVA of 09/13/2005. Dr.Weiss consults with 2 doctors in Connecticut |

160826200070111

| | | |
|---|---|---|
| | | and with the Barrow Clinic in Arizona concerning Francesca's TBI. He treats her with Homeopathy and with the Bemer, (Bio Electro Magnetic Energy Regulation). Her symptoms have, however, remained the same. Dr. Weiss refers Francesca to Presbyterian Rehab Services for treatment of her dizziness and vertigo. He refers her to the Barrow Institute in Arizona for a consultation and treatment of her TBI.<br><br>Total Bill: $1,469.85 |
| | | **Total Bill for All Collison Related Medical Expenses:**<br><br>**$31,578.49** |

**Conclusion**

The underinsured motorist's negligence has radically and permanently altered Ms. Tuoni's body and her life, and not in a good way. Therefore she makes demand for settlement for sum of $400,000.00 or policy limits, whichever is lesser. This offer to settle in this manner will remain open until August 19, 2016, at which time it will be withdrawn if we have not settled.

If you have any questions, feel free to contact me. Thank you.

Yours truly,

John Tiwald, P.C.

by John Tiwald

JT/mcr
Enclosures